WILLIAM S. WOJSKO and MARCIA WOJSKO v. STATE OF NORTH CARO-LINA; RUFUS EDMISTEN, ATTORNEY GENERAL; PERRY POWELL, DIREC-TOR, NORTH CAROLINA JUSTICE ACADEMY

No. 804SC129

(Filed 15 July 1980)

1. **State § 4.4– alleged breach of employment contract by State – application of sovereign immunity**

    Plaintiff's alleged claim for breach of a contract of employment with the State accrued on the date he was discharged, 1 August 1975. Therefore, the decision of *Smith* v. *State*, 289 NC 303, which abrogated the doctrine of sovereign immunity and is to be applied prospectively after 2 March 1976, did not apply to plaintiff's action, and it was barred by the doctrine of sovereign immunity.

2. **State § 5.1– claim against State for intentional torts – application of sovereign immunity**

    Plaintiff's claim against the State and its agents for damages for the intentional torts of false representation and fraudulent inducement were barred by the doctrine of sovereign immunity since suits against the State, its agencies and its officers for alleged tortious acts can be maintained only to the extent authorized by the Tort Claims Act, and intentional torts are not compensable under the Tort Claims Act.

APPEAL by plaintiff, William S. Wojsko, from *Llewellyn, Judge.* Judgment entered 16 November 1979 in Superior Court, SAMPSON County. Heard in the Court of Appeals on 9 June 1980.

In a complaint filed 1 March 1978 plaintiff purported to allege three causes of action against the State of North Carolina, Attorney General Edmisten, and director of the North Carolina Justice Academy Perry Powell, based on a contract of employment entered into between plaintiff and defendants on 20 January 1975. First, plaintiff claimed that, when he was hired as Director of Program Development and Evaluation for the Justice Academy, he was promised a certain status and "supervisory authority" which never materialized; that instead he was "relegated" to a status which was inferior to that promised; that he "had no real professional function . . . as promised"; and that such constituted a breach of his employment contract. Second, plaintiff alleged that by false representations the defendants had fraudulently induced him and his wife to leave their home and his job in Florida and to accept employment at the Justice Academy. Third, plaintiff alleged that he was wrongfully discharged from his employment on 1 August 1975. He claimed that his termination was motivated by defendants' "desire to punish" him because he had relayed to the "proper authorities" information concerning alleged illegal conduct at the Justice Academy "by certain high ranking individuals."

Defendants moved to dismiss the complaint for its failure to state a claim for which relief could be granted, G.S. § 1A-1, Rule 12(b)(6), and for the reason that the doctrine of sovereign immunity barred the action. On 21 June 1978 the motion was allowed as to the plaintiff Marcia Wojsko and denied as to the plaintiff William Wojsko. Thereafter, defendants filed an answer admitting the contract, but denying that it had been breached in any particular.

On 2 April 1979 defendants moved for summary judgment and supported their motion with, inter alia, the affidavit of William L. Brewer, Jr., who was business officer of the Justice Academy at the times pertinent to this lawsuit. In his affidavit, Brewer outlined the "organizational hierarchy" of the Academy to show that his position as business officer and plaintiff's position as director of program development and evaluation, as well as the chairmanship positions of two other departments, "were at the same level, and the persons occupying them were equal in responsibilities and authority," although they

were subordinate to the director who had general supervision over the facility. Brewer also explained certain conduct and practices at the Academy which plaintiff had challenged as improper or illegal and related in detail the incident giving rise to plaintiff's termination of employment. Brewer avowed that on 29 July 1975 he was acting as director of the Academy in the absence and at the direction of the defendant Powell as evidenced by a memo to that effect prepared by Powell and posted by Powell's secretary; that plaintiff and his staff were preparing the Academy newsletter for mailing that day; that the mailing was supposed to be taken to the post office by 3:00 p.m.; and that a few minutes before 3:00, plaintiff came by his [Brewer's] office carrying the newsletters. Brewer described the ensuing incident as follows:

> I reminded him of the time deadline for mailing and directed him to take the newsletters to the Post Office. Mr. Wojsko then became abusive and insulting to me. He threw the newsletters down on the floor in front of my office. I told him to remove them and mail them. He cursed me and said that if I wanted the letters mailed, I could do it myself . . . . Following his outburst, he left the Academy for the remainder of the day.

Brewer reported the incident to Powell, whose deposition testimony was also relied on by defendants to support their summary judgment motion. Powell testified in substance that plaintiff had been offered the position of director of program development and evaluation at an annual salary of $15,468; that plaintiff had been hired for and was occupying that position when his employment with the Academy terminated; and that plaintiff had been asked to resign as a result of the incident regarding the newsletters which Powell had determined was an act of insubordination.

Powell testified further that the plaintiff's charges of misconduct related primarily to the practice of placing certain items of personal property belonging to the Academy in the homes of certain Academy employees. He said the essential reasons for so doing were (1) to guard against stealing which initially had been a serious problem at the facility, and (2) to

provide accommodations for out-of-town visitors to the facility. In each instance challenged by plaintiff, Powell testified, the practice had been approved by the Attorney General's office.

In opposition to the defendants' motion for summary judgment, plaintiff submitted his affidavit and the affidavit of his wife, Marcia. Plaintiff detailed the allegations of his complaint, asserting that the position he had been promised was the "number 2 man" to the director and that he was supposed to be superior in authority to all personnel except the director. Instead, he said he found out after he came to the Academy that his position was inferior to the other directorial slots and that he was not second in command. He averred that the defendant Powell had a "personal grudge" against him and that he had maliciously been labeled a "trouble maker." With respect to the incident giving rise to his termination, plaintiff avowed that Brewer, not plaintiff, had become "abusive and insulting" when plaintiff brought the newsletters to Brewer's office. Brewer demanded that plaintiff put the newsletters down, and he did "just that." Then Brewer told plaintiff to remove the newsletters. Plaintiff stated, "I could see I could do no more with him because he was at this point red in the face, cursing and I simply left and went about my business." Plaintiff contended that his actions did not constitute insubordination for the reason that Brewer had no authority to give plaintiff "direct orders." Plaintiff and his wife also alleged that she had been promised a job as "Food Supervisor" at the Academy, that the promise was falsely made and had fraudulently induced them to leave Florida and come to North Carolina.

Plaintiff's deposition testimony was substantially the same, although he conceded that all he had been promised when the job offer was actually made was "just the job, the title and the money," and that he expected to be fired as a result of the incident with Brewer. Plaintiff reiterated his charges that "crimes" were being committed at the Academy , but stated, "I am not saying that the discovery of crimes at the Academy by me were [sic] the only reason for my termination."

On 19 November 1979, after considering "the briefs of counsel ... and the Complaint, the Answer, the Depositions ... , and

Wojsko v. State

the Affidavits . . . ," the trial court entered summary judgment for the defendants. Plaintiff appealed.

*Bruce H. Robinson, Jr., for the plaintiff appellant.*

*Attorney General Edmisten, by Senior Deputy Attorney General Andrew A. Vanore, Jr., and Assistant Attorney General Kaye R. Webb, for the defendant appellees.*

HEDRICK, Judge.

Plaintiff contends that the court erred in granting the defendants' motion for summary judgment for that the materials considered by the trial judge demonstrate that genuine issues of material fact exist with respect to each cause of action asserted. Assuming *arguendo* that the record before us does disclose issues of material fact with respect to the three claims asserted, summary judgment for defendants, nevertheless, was appropriate since the evidence in support of and in opposition to the motion affirmatively establishes that plaintiff's alleged claims are barred by the doctrine of sovereign immunity.

[1] Plaintiff's first cause of action alleges a claim for damages for the defendants' supposed breach of the terms of plaintiff's contract of employment with the State of North Carolina. Plaintiff denominates and consistently refers to this first cause of action as a claim for breach of contract. In similar fashion, plaintiff's third cause of action asserts a claim for damages for defendants' alleged breach of plaintiff's contract in wrongfully causing plaintiff to terminate his employment.

As recently settled by our Supreme Court, plaintiff's alleged claim for breach of contract accrued on the date he was discharged, which was 1 August 1975. *See MacDonald v. University of North Carolina*, 299 N.C. 457, 263 S.E. 2d 578 (1980). On 1 August 1975, the doctrine of sovereign immunity was alive and well in this State and operated to preclude suits against the State, its agencies and its officers for alleged breaches of contracts entered into with the State. Such a suit simply would not lie. Some four years ago, however, the doctrine was abrogated

in its entirety by our Supreme Court which held as follows in *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976):

> [W]henever the State of North Carolina, through its autho-rized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract. Thus, in this case, and *in causes of action on contract arising after the filing date of this opinion, 2 March 1976*, the doctrine of sovereign immunity will not be a defense to the State.

[Emphasis added.] The abrogation of the doctrine was clearly declared to be prospective only, and the subsequent decision in *MacDonald v. University of North Carolina, supra*, resolved any lingering doubts to the contrary. As the *MacDonald* Court observed, 299 N.C. at 463, 263 S.E.2d at 582: "[W]e reaffirm the conclusion of *Smith* in favor of a wholly prospective application of the abrogation of the doctrine of sovereign immunity." Thus, in the present case plaintiff's first and third claims arising out of the alleged breach of his employment contract with the State are barred by the doctrine of sovereign immunity.

**[2]** By his second cause of action, plaintiff asserts a claim for damages for alleged false representations made by defendants to fraudulently induce plaintiff to leave his home and his job in Florida. This second claim clearly sounds in tort. Suits against the State, its agencies and its officers for alleged tortious acts can be maintained only to the extent authorized by the Tort Claims Act, G.S. § 143-291 *et seq.*, and that Act authorizes recov-ery only for negligent torts. Intentional torts committed by agents and officers of the State are not compensable under the Tort Claims Act. *See, e.g., Givens v. Sellars*, 273 N.C. 44, 159 S.E.2d 530 (1968); *Braswell v. North Carolina A & T State University*, 5 N.C. App. 1, 168 S.E.2d 24 (1969).

Plaintiff in the present case seeks to recover damages for the intentional torts of false representation and fraudulent inducement. It has been observed by our Supreme Court that "[i]n no forum is the [State] liable for fraudulent misrepresenta-tions." *Davis v. North Carolina State Highway Commission*, 271 N.C. 405, 408, 156 S.E. 2d 685, 688 (1967). In *Davis* plaintiffs

alleged that the Highway Commission by false representations fraudulently and unnecessarily induced them to vacate their home two years before it was required for highway purposes. Noting that neither intentional misrepresentation nor fraud is negligence, the Court held that the plaintiffs' allegations were insufficient to state a cause of action against the Highway Commission. We find the decision in *Davis* plainly apposite to and dispositive of the question posed by the present plaintiff's second claim for relief. Consequently, that claim, too, is barred by the sovereign immunity of the State, its agencies and its officers.

We hold that the trial court correctly granted the defendants' motion for summary judgment and the judgment entered thereon is

Affirmed.

Judges MARTIN (Robert M.) and MARTIN (Harry C.) concur.