PETROLEUM TRADERS CORPORATION, AN INDIANA CORPORATION, AND OTHERS SIMILARLY SITUATED, PLAINTIFFS v. STATE OF NORTH CAROLINA, MICHAEL F. EASLEY, GOVERNOR OF THE STATE OF NORTH CAROLINA, E. NORRIS TOLSON, SECRETARY OF REVENUE OF THE STATE OF NORTH CAROLINA, THE DEPARTMENT OF REVENUE OF THE STATE OF NORTH CAROLINA, BRITT COBB, SECRETARY OF ADMINISTRATION OF THE STATE OF NORTH CAROLINA, THE DEPARTMENT OF ADMINISTRATION OF THE STATE OF NORTH CAROLINA, GEORGE J. BAKOLIA, CHIEF INFORMATION OFFICER FOR THE STATE OF NORTH CAROLINA, THE OFFICE OF INFORMATION TECHNOLOGY SERVICES OF THE STATE OF NORTH CAROLINA, ROBERT L. POWELL, CONTROLLER OF THE STATE OF NORTH CAROLINA, AND THE OFFICE OF THE STATE CONTROLLER FOR NORTH CAROLINA, DEFENDANTS

No. COA07-1176

(Filed 20 May 2008)

**1. Appeal and Error— appealability—interlocutory order— governmental immunity—substantial right**

   Although defendants' appeal from the denial of its motion to dismiss Counts I and II arising out of the use of the online bidding process through E-Procurement for the sale of fuel to the State of

**PETROLEUM TRADERS CORP. v. STATE**

[190 N.C. App. 542 (2008)]

North Carolina or its governmental entities and agencies is an appeal from an interlocutory order, orders denying dispositive motions grounded on the defense of governmental immunity are immediately reviewable as affecting a substantial right.

**2. Constitutional Law; Immunity— N.C. Constitution Declaration of Rights—sovereign immunity**

A de novo review revealed that the trial court erred in an action arising out of the use of the online bidding process through E-Procurement for the sale of fuel to the State of North Carolina or its governmental entities and agencies by denying defendants' motion to dismiss for lack of jurisdiction based on the affirmative defense of sovereign immunity because: (1) defendants are state agencies and officials sued in their official capacity, and they did not expressly waive sovereign immunity; (2) sovereign immunity was not waived by either of the pertinent statutes under which plaintiff filed Count I and II; (3) plaintiff's complaint does not allege a violation of any right in the N.C. Constitution's Declaration of Rights, but instead references N.C. Const. Art. II, § 23; (4) *Corum*, 330 N.C. 761 (1992), is limited to the holding that sovereign immunity cannot prevent a plaintiff from asserting a claim alleging violation of his rights under the Declaration of Rights; and (5) even assuming arguendo that generalized language employed by our Supreme Court in various cases could be interpreted to state a waiver of sovereign immunity in every case brought under the N.C. Constitution, that language is mere dicta. N.C.G.S. § 105-267.

Appeal by Defendants from order entered 26 June 2007 by Judge Henry V. Barnette, Jr., in Wake County Superior Court. Heard in the Court of Appeals 3 April 2008.

*Locke Reynolds LLP, by Michael S. Elvin, Pro Hac Vice; and Boyce & Isley, PLLC, by G. Eugene Boyce and Philip R. Isley, for Plaintiff-Appellees.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Ronald M. Marquette, and Special Deputy Attorney General Karen E. Long, for Defendant-Appellants.*

ARROWOOD, Judge.

Plaintiff, Petroleum Traders Corporation, is an Indiana corporation that sells gasoline and diesel fuel to its customers, which include

the State of North Carolina and various municipalities and governmental entities. Defendants are the Governor of North Carolina; the North Carolina Department of Administration and the Department of Revenue; the North Carolina Office of Information Technology and Office of State Controller; and the officials in charge of these agencies. Defendants appeal from the trial court's denial of their motion to dismiss Counts I and II of Plaintiff's complaint. We reverse.

For purposes of the issues raised on appeal, the pertinent facts are largely undisputed and may be summarized as follows: Plaintiff previously has executed contracts for the sale of fuel to the State of North Carolina or its governmental entities and agencies (North Carolina). Such contracts are awarded under competitive bidding procedures. Several years ago, North Carolina instituted an online bidding process called "E-Procurement," and the state now requires vendors such as Plaintiff to submit bids online using the E-Procurement website. Although vendors are not charged for using the E-Procurement website, the winning bidder is charged an E-Procurement marketing fee of 1.75% of the contract amount. This fee is authorized by N.C. Gen. Stat. § 66-58.12 (2007), which provides in pertinent part that:

(a) Public agencies are encouraged to maximize citizen and business access to their services through the use of electronic and digital transactions. . . .

(b) An agency may charge a fee to cover its costs of permitting a person to complete a transaction through the World Wide Web or other means of electronic access. . . .

The E-Procurement website states that this fee "helps pay for the development and ongoing operations of the North Carolina E-Procurement Service; this includes the services required to effectively implement an initiative of this size, develop and execute training required for both buyers and suppliers, and provide the ongoing maintenance and services needed to sustain the Service." Plaintiff has been awarded contracts for which it was charged the E-Procurement marketing fee.

On 19 July 2006 Plaintiff filed suit against Defendants, in a complaint alleging in pertinent part that: (1) vendors are required to use the E-Procurement system to bid on public contracts in North Carolina; (2) successful bidders are charged an E-Procurement fee in the amount of 1.75% of the total dollar amount of the contract; (3) the

dollar amount of E-Procurement fees that are collected is far greater than the amount needed to maintain the E-Procurement system; and that (4) "on information and belief" some of the monies collected as E-Procurement fees have been used to supplement the State's general operating funds and to subsidize shortfalls in its general operating budget. Plaintiff brought the following claims against Defendants:

1. Count I seeks a declaratory judgment that the E-Procurement fee "is a tax not a fee" and that, as a tax "not enacted by the Legislature," it violates Art. II, § 23 of the North Carolina Constitution."

2. Count II is a claim under N.C. Gen. Stat. § 105-267 for refund of the "unconstitutional taxes" that Plaintiff alleges it paid in the form of E-Procurement fees.

3. Count III seeks a declaratory judgment that the E-Procurement fee violates the Commerce Clause of the U.S. Constitution.

4. Count IV seeks a declaratory judgment that the E-Procurement fee violates the Takings Clauses of the U.S. and North Carolina Constitutions.

5. Count V seeks release of certain public records.

On 14 September 2006 Defendants filed a motion to dismiss Plaintiff's action, under N.C. Gen. Stat. § 1A-1, Rule 12(b)(1), (2), and (6) (2007). Defendants asserted, *inter alia*, that Counts I through IV were barred by sovereign immunity; that G.S. § 105-267 did not apply to Count II; and that Count V was moot. On 31 May 2007 the trial court issued a ruling stating its intention to allow Defendants' motion to dismiss as to Counts III, IV, and V, and to deny Defendants' motion for dismissal as to Counts I and II. The trial court ruled that the doctrine of sovereign immunity did not bar Count I or II of Plaintiff's complaint. On 26 June 2007 the trial court entered an order dismissing Counts III, IV, and V, and denying Defendants' motion to dismiss Counts I and II. From this order Defendants have appealed.

---

**[1]** Preliminarily, we note that although Defendants' appeal is interlocutory, it is properly before us because "orders denying dispositive motions grounded on the defense of governmental immunity are immediately reviewable as affecting a substantial right." *Hedrick v. Rains*, 121 N.C. App. 466, 468, 466 S.E.2d 281, 283 (1996).

[2] Defendants argue that the trial court erred by denying their motion to dismiss for lack of jurisdiction based on the affirmative defense of sovereign immunity. Defendants assert that they did not expressly waive sovereign immunity; that there is no statutory waiver applicable to Plaintiff's claims; and that the common law waiver of sovereign immunity identified in *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992), does not apply to Plaintiff's claims. We agree.

"The standard of review on appeal from a motion to dismiss is *de novo*." *N.C. Ins. Guar. Ass'n v. Bd. of Trs. of Guilford Tech. Cmty. Co.*, 185 N.C. App. 518, 520, 648 S.E.2d 859, 860 (2007) (citing *Hatcher v. Harrah's N.C. Casino Co., LLC*, 169 N.C. App. 151, 155, 610 S.E.2d 210, 212 (2005)). "Under a *de novo* review, the [C]ourt considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citations omitted).

" 'As a general rule, the doctrine of governmental, or sovereign immunity bars actions against, *inter alia*, the state, its counties, and its public officials sued in their official capacity.' " *Herring v. Winston-Salem/Forsyth County Bd. of Educ.*, 137 N.C. App. 680, 683, 529 S.E.2d 458, 461 (2000) (quoting *Messick v. Catawba County*, 110 N.C. App. 707, 714, 431 S.E.2d 489, 493 (1993)). Thus, "a state may not be sued . . . unless it has consented by statute to be sued or has otherwise waived its immunity from suit." *Battle Ridge Cos. v. N.C. Dep't of Transp.*, 161 N.C. App. 156, 157, 587 S.E.2d 426, 427 (2003) (citations omitted).

In the instant case, Defendants are state agencies and officials sued in their official capacity. Defendants did not expressly waive sovereign immunity. Accordingly, in the absence of a statutory or implied waiver, Plaintiff's claims are barred by the defense of sovereign immunity.

We first consider whether there is a statutory waiver applicable to Plaintiff's claims. Count I is brought under N.C. Gen. Stat. § Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253 to 1-267 (2007). Defendants assert that the Declaratory Judgment Act does not waive sovereign immunity, and Plaintiff concedes that it "has not relied on the Declaratory Judgment Act to establish the absence of sovereign immunity." Count II seeks relief under N.C. Gen. Stat. § 105-267 (2007). Defendants assert that G.S. § 105-267 waives sovereign immunity only for claims against the Secretary of Revenue for the refund

of taxes, as defined by statute, and argue that, although N.C. Gen. Stat. § 105-267 provides a limited waiver of sovereign immunity, it "does not waive immunity for the particular claim made by Plaintiff." Plaintiff does not challenge this assertion. We conclude that sovereign immunity is not waived by either of the statutes under which Plaintiff has filed Count I and II.

We next consider the possibility of a non-statutory waiver of sovereign immunity. Plaintiff argues that it has a "common law basis" for its claim, based on a waiver of sovereign immunity that was judicially created in *Corum*. The *Corum* plaintiff asserted a violation of his right to freedom of speech, a personal right guaranteed by the N.C. Constitution. *Corum* recognized a direct cause of action under the N.C. Constitution for alleged violation of personal rights granted by the Declaration of Rights, and held that this cause of action was not barred by sovereign immunity.

Plaintiff's complaint does not allege a violation of any right in the N.C. Constitution's Declaration of Rights. Instead, Plaintiff's complaint alleges a violation of North Carolina Constitution Art. II, Section 23, which provides that:

> No law shall be enacted to raise money on the credit of the State, or to pledge the faith of the State directly or indirectly for the payment of any debt, or to impose any tax upon the people of the State, or to allow the counties, cities, or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the General Assembly and passed three several readings, which readings shall have been on three different days, and shall have been agreed to by each house respectively, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the journal.

Thus, N.C. Const. Art. II, § 23 articulates procedural rules for the passage of a revenue or tax bill, requiring that: (1) the bill must be read three times on three different days; (2) must pass each time; and (3) must be recorded in the journal of the proceedings of the General Assembly. It does not articulate any rights, only procedures to be followed.

The dispositive issue on appeal is the applicability of *Corum* to Counts I and II of Plaintiff's complaint. Defendants argue that *Corum* articulated a waiver of sovereign immunity specifically for claims arising under the Declaration of Rights, and contend that

*Corum* does not state a generalized waiver of sovereign immunity for all claims that might assert a violation of any provision of the N.C. Constitution. We agree, and conclude that the waiver of sovereign immunity established by *Corum* does not extend to Count I or II of Plaintiff's complaint.

As discussed above, *Corum* held that the doctrine of sovereign immunity could not bar a plaintiff's direct claim under the N.C. Constitution for violation of a right guaranteed by the Declaration of Rights. Our appellate courts have applied the holding of *Corum* to find a waiver of sovereign immunity only in cases wherein the plaintiff alleged a violation of a right protected by the Declaration of Rights. Plaintiff takes the position that it is basically an irrelevant coincidence that *Corum* and all the cases following it have dealt with rights protected by the Declaration of Rights, arguing that these cases "just so happen to involve the Declaration of Rights[.]" We disagree.

A fair reading of *Corum* reveals that its holding was closely focused on the nature of the plaintiff's claim. The North Carolina Supreme Court first discussed the significance of the personal rights guaranteed by the Declaration of Rights:

> Our Constitution states: Freedom of speech and Press. Freedom of speech and of the press . . . shall never be restrained[.] . . . N.C. Const. art. I, § 14. The words shall never be restrained are a direct personal guarantee of each citizen's right of freedom of speech. . . . The civil rights guaranteed by the Declaration of Rights in Article I of our Constitution are individual and personal rights entitled to protection against state action[.] . . . [T]his obligation to protect the fundamental rights of individuals is as old as the State. . . . We give our Constitution a liberal interpretation in favor of its citizens with respect to those provisions which were designed to safeguard the liberty and security of the citizens in regard to both person and property.

*Corum*, 300 N.C. at 781-83, 413 S.E.2d at ——. The Court stated that it "recognized a direct action under the State Constitution against state officials for violation of rights guaranteed by the Declaration of Rights." *Id.* The Court then held that protection of personal rights guaranteed in the N.C. Constitution Declaration of Rights was of sufficient importance that it should not be barred by the doctrine of sovereign immunity:

> Having determined that there is a direct claim against the State under the Declaration of Rights for the protection of plaintiff's

free speech rights, we turn to the question of the relevance of the doctrine of sovereign immunity. . . . [C]ourts have deferred to the legislature the determination of those instances in which the sovereign waives its traditional immunity. However, in determining the rights of citizens under the Declaration of Rights of our Constitution, it is the judiciary's responsibility to guard and protect those rights. The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights.

*Id.* at 785-86, 413 S.E.2d at 291.

This nexus between protection of the fundamental rights guaranteed in the Declaration of Rights and the waiver of sovereign immunity was reiterated by the North Carolina Supreme Court in *Augur v. Augur*, 356 N.C. 582, 589, 573 S.E.2d 125, 130-31 (2002):

Our courts are obligated to protect fundamental rights when those rights are threatened. . . . Therefore, where it "clearly appears either that property or fundamental human rights are denied in violation of constitutional guarantees," and where a statutory provision is specifically challenged by a person directly affected by it, declaratory relief as to the constitutional validity of that provision is appropriate.

(quoting *Jernigan v. State*, 279 N.C. 556, 562, 184 S.E.2d 259, 264 (1971)) (citations omitted).

We conclude that *Corum* is properly limited to its stated holding, that sovereign immunity cannot prevent a plaintiff from asserting a claim alleging violation of his rights under the Declaration of Rights. We reject Plaintiff's contention to the contrary.

Plaintiff cites *Peverall v. County of Alamance*, 154 N.C. App. 426, 573 S.E.2d 517 (2002), in support of its assertion that it is "well established" that sovereign immunity is waived by claims alleging violation of any part of the N.C. Constitution. Plaintiff supports this contention with generalized language in *Peverall* discussing claims under the N.C. Constitution without specifying a particular part of the constitution. However, as in the other cases that find a waiver of sovereign immunity based on *Corum*, the plaintiff in *Peverall* alleged violation of a right guaranteed by the Declaration of Rights:

Due Process Claim: . . . [P]laintiff alleged that defendant's actions were arbitrary and capricious and in violation of . . . Article I,

Section 19 of the North Carolina Constitution. It is well established that sovereign immunity does not protect the state or its counties against claims brought against them directly under the North Carolina Constitution. *See Corum*, 330 N.C. at 785-86, 413 S.E.2d at 291. Because plaintiff brought his due process claim pursuant to Article I, Section 19 of the North Carolina Constitution, defendant is not entitled to the defense of sovereign immunity against this claim.

*Id.* at 430, 573 S.E.2d at 519-20.

Plaintiff also cites *Sanders v. State Pers. Comm'n*, 183 N.C. App. 15, 644 S.E.2d 10, *disc. review denied*, 361 N.C. 696, 652 S.E.2d 653 (2007), quoting generalized language that refers to claims brought under the N.C. Constitution, without specifying that the claims were brought under the Declaration of Rights. Plaintiff uses this language to support its position that *Corum* extends to the entire N.C. Constitution. However, as in *Peverall* and every other case waiving sovereign immunity based on *Corum*, the *Sanders* plaintiffs alleged a violation of a right protected by the Declaration of Rights, in this case the right to equal protection:

According to plaintiffs, they have been unlawfully denied the . . . benefits accorded to permanent employees of the State in violation of . . . [Art.] I, [§ §] 1, 19, and 35, of the North Carolina Constitution. . . . In *Corum*, our Supreme Court specifically held: The doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights. The Court emphasized that when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail.

*Sanders*, 183 N.C. App. at 16-17, 644 S.E.2d at 11 (internal quotation marks omitted).

*Sanders* and *Peverall* both address the holding of *Corum* in the context of a plaintiff who, like the plaintiff in *Corum*, alleged a violation of a personal right protected by the Declaration of Rights. Accordingly, neither case required the Court to determine whether *Corum* extended beyond its apparent holding. Therefore, even assuming, *arguendo*, that generalized language employed by the Court in those cases could be interpreted to state a waiver of sovereign immunity in every case brought under the N.C. Constitution, this would be

mere dicta. *See, e.g., In re University of North Carolina,* 300 N.C. 563, 576, 268 S.E.2d 472, 476 (1980), holding that the Court's discussion of an issue in an earlier case:

> was *dictum,* as this question of constitutional interpretation was not actually presented nor was it involved in determining the case. As *obiter dictum* it does not constitute precedent controlling our determination of this appeal.

*Id.* at 576, 268 S.E.2d at 480 (citing *Cemetery, Inc. v. Rockingham County,* 273 N.C. 467, 160 S.E.2d 293 (1968); and *Hayes v. Wilmington,* 243 N.C. 525, 91 S.E.2d 673 (1956)) (other citation omitted). This Court has observed that:

> "Looseness of language and *dicta* in judicial opinions, either silently acquiesced in or perpetuated by inadvertent repetition, often insidiously exert their influence until they result in confusing the application of the law, or themselves become crystallized into a kind of authority which the courts, without reference to true principle, are constrained to follow.' "

*State v. Phillips,* 171 N.C. App. 622, 632, 615 S.E.2d 382, 388 (2005) (quoting *Smith v. R.R.,* 114 N.C. 728, 749-50, 19 S.E. 863, 869 (1894)).

" 'Waiver of sovereign immunity may not be lightly inferred[.]' " *Meyer v. Walls,* 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) (quoting *Guthrie v. N.C. State Ports Auth.,* 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983)). *Corum* contains no suggestion of an intention to eliminate sovereign immunity for any and all alleged violations of the N.C. Constitution. Its holding is closely tethered to its stated policy rationale, that the personal rights guaranteed by the N.C. Constitution Declaration of Rights are of such fundamental importance that their protection should not be barred by the doctrine of sovereign immunity must fail. We conclude that *Corum* is properly limited to claims asserting violation of the plaintiff's personal rights as set out in the N.C. Constitution Declaration of Rights. We further conclude that the trial court erred and that its order denying Defendants' motion to dismiss the claims in Count I and II must be

Reversed.

Judges McCULLOUGH and STEELMAN concur.