ATLANTIC COAST CONFERENCE, Plaintiff

v.

UNIVERSITY OF MARYLAND, COLLEGE PARK; BOARD OF REGENTS, UNIVERSITY SYSTEM OF MARYLAND, Defendants

No. COA13-532

Filed 19 November 2013

1. **Appeal and Error—interlocutory orders and appeals—sovereign immunity—substantial right**

   The Court of Appeals had jurisdiction to hear defendants' interlocutory appeal from the trial court's denial of their motion to dismiss for lack of personal jurisdiction. Defendants' claim of sovereign immunity was immediately appealable as affecting a substantial right.

2. **Appeal and Error—standard of review—comity—question of law—de novo**

   The question of whether a North Carolina court should extend comity to a sister state's sovereign immunity request is a question of law reviewable *de novo*.

**3. Immunity—comity—obligations in contract**

    The trial court did not err by denying defendant's motion to dismiss on the grounds of sovereign immunity. Because public policy does not allow the State of North Carolina to avoid its obligations in contract, the extension of comity in this case would have violated public policy. Based on this conclusion, the Court of Appeals declined to consider whether defendants would have been entitled to sovereign immunity as a matter of Maryland law.

Appeal by defendants from order entered 25 February 2013 by Judge John O. Craig, III in Guilford County Superior Court. Heard in the Court of Appeals 26 September 2013.

*Smith Moore Leatherwood LLP, by D. Clark Smith, Jr. and Alexander L. Maultsby, and Van Laningham Duncan LLP, by Alan W. Duncan, for plaintiff-appellee.*

*Hagan Davis Mangum Barrett & Langley PLLC, by Charles T. Hagan, III, J. Alexander S. Barrett, and Jason B. Buckland, for defendants-appellants.*

HUNTER, JR., Robert N., Judge.

The University of Maryland, College Park ("the University of Maryland") and the Board of Regents for the University System of Maryland ("the Board of Regents") (collectively "Defendants") appeal from an order denying their motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure. Despite the interlocutory nature of their appeal, Defendants contend that this Court has jurisdiction pursuant to N.C. Gen. Stat. § 1-277(a) and (b) (2011). Furthermore, Defendants contend that the complaint should be dismissed because they are entitled to sovereign immunity under the principle of comity. While we agree that this Court has jurisdiction to hear Defendants' appeal, we disagree with Defendant's comity argument and affirm the trial court's order.

## I. Factual & Procedural History

On 26 November 2012, the Atlantic Coast Conference ("the ACC") filed a complaint in Guilford County Superior Court seeking a declaratory judgment that a withdrawal payment provision in the ACC Constitution is a valid liquidated damages clause enforceable against Defendants. The facts as alleged in the complaint are as follows.

ATL. COAST CONF. v. UNIV. OF MD.

[230 N.C. App. 429 (2013)]

The ACC is a North Carolina unincorporated nonprofit association with its principal place of business in Greensboro, North Carolina. When the complaint in this action was filed, the ACC's membership consisted of twelve colleges and universities located along the eastern seaboard. In addition to the University of Maryland, the ACC's membership included Boston College, Clemson University, Duke University, Florida State University, the Georgia Institute of Technology, the University of Miami, the University of North Carolina, North Carolina State University, the University of Virginia, Virginia Polytechnic Institute and State University, and Wake Forest University.[1]

With its principal place of business in College Park, Maryland, the University of Maryland is a public institution organized and existing under the laws of the State of Maryland. The University of Maryland has been a member of the ACC since the ACC's founding in 1953. The Board of Regents is the governing body for the University System of Maryland and takes official actions on behalf of its constituent universities.

Each member of the ACC, including the University of Maryland, has agreed to conduct business with each other according to the terms of the ACC Constitution. The ACC Constitution grants the complete responsibility for and authority over the ACC to the Council of Presidents ("the Council"), comprised of the chief executive officer of each member institution. Each member, including the University of Maryland, has agreed to be bound by the vote of the Council.

On 13 September 2011, in response to a growing concern that a member institution's withdrawal from the ACC could cause financial damage to the conference, the Council unanimously voted to amend the ACC Constitution to establish a mandatory withdrawal payment at one and one-quarter times the total operating budget of the ACC.[2] Defendants' representative on the Council proposed the factor used in the calculation and voted for the amendment.

The ACC alleges that after the September 2011 vote, the potential financial damage that would result from a member institution's withdrawal substantially increased. In response, the Council voted in

---

1. Since the filing of the complaint, the University of Notre Dame, the University of Pittsburgh, and Syracuse University have joined the ACC.

2. The annual operating budget of the ACC for the 2012—2013 year was $17,422,114. Multiplying this figure by the agreed upon factor of one and one-quarter makes the total withdrawal penalty $21,777,642.50.

September 2012 to change the formula used to calculate the withdrawal payment from one and one-quarter to three times the total operating budget of the ACC.[3] Defendants' representative on the Council voted against this measure.

Not long after the Council voted to increase the withdrawal payment, Defendants informed the ACC on 19 November 2012 of their decision to withdraw from the ACC. On the same day, Defendants held a press conference publicly announcing their decision to withdraw from the ACC and to join the Big Ten Conference.

The ACC alleges that the University of Maryland's withdrawal from the ACC subjects them to a mandatory withdrawal payment in the amount of $52,266,342. The ACC further alleges that Defendants' public statements and conduct since their decision to leave the ACC make it clear that Defendants do not intend to make the withdrawal payment. Accordingly, the ACC filed this action seeking a declaration that the withdrawal payment is a valid and enforceable liquidated damages sum and that the University of Maryland is obligated to pay the sum under the terms of its membership in the ACC.

On 18 January 2013, Defendants filed a pre-answer motion to dismiss the ACC's complaint for lack of personal jurisdiction under Rule 12(b)(2) of the North Carolina Rules of Civil Procedure. Specifically, Defendants asserted that the trial court lacked jurisdiction "based upon the sovereign immunity of the State of Maryland."[4] Following briefing and a hearing on the matter, the trial court denied Defendants' motion on 25 February 2013. In so doing, the trial court refused to extend comity to Defendants' claim of sovereign immunity in North Carolina's courts.

On 4 March 2013, Defendants filed a notice of appeal in the trial court from the order denying their motion to dismiss. Thereafter, the ACC responded with its own motion to deny Defendants' implied request for a stay of the trial court's proceedings and asked the trial court to retain jurisdiction.[5] Following briefing and a hearing on the matter, the trial

---

3. Multiplying the annual operating budget of the ACC for the 2012—2013 year by the new factor of three increases the total withdrawal penalty to $52,266,342.

4. On the same day, Defendants filed their own complaint in the Circuit Court for Prince George's County, Maryland seeking, among other things, a declaration that the withdrawal payment is invalid and unenforceable. The Maryland action has been stayed pending resolution of the present action in North Carolina, an order that was recently affirmed by Maryland's highest court.

5. N.C. Gen. Stat. § 1-294 (2011) provides that "[w]hen an appeal is perfected as provided by this Article it stays all further proceedings in the court below upon the judgment

court granted the ACC's motion to retain jurisdiction on 28 March 2013 and ordered Defendants to file a responsive pleading.

On 4 April 2013, Defendants filed a petition for the issuance of a writ of supersedeas in this Court asking us to stay the trial court's proceeding pending resolution of Defendants' appeal. By order of this Court on 18 April 2013, Defendants' petition was allowed and all proceedings in the court below were stayed pending our review of Defendants' appeal.

## II. Jurisdiction

[1] At the outset, we must determine whether this Court has jurisdiction to hear Defendants' interlocutory appeal. Defendants contend that the trial court's order denying Defendants' claim of sovereign immunity is immediately appealable as affecting a substantial right. We agree.

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Thus, because the trial court's denial of Defendants' motion to dismiss did not dispose of the case below, Defendants' appeal is interlocutory in nature.

However, an "immediate appeal is available from an interlocutory order or judgment which affects a substantial right." *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (quotation marks omitted); accord N.C. Gen. Stat. §§ 1-277(a), 7A-27(d) (2011). Our Supreme Court has defined a "substantial right" as "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a [person] is entitled to have preserved and protected by law: a material right." *Sharpe*, 351 N.C. at 162, 522 S.E.2d at 579 (quotation marks and citation omitted) (alteration in original).

"Admittedly the 'substantial right' test for appealability of interlocutory orders is more easily stated than applied. It is usually necessary

---

appealed from." It is the ACC's position that Defendants have appealed a nonappealable interlocutory order. Thus, their motion asked the trial court to proceed as if the appeal had not been taken. *See, e.g., Velez v. Dick Keffer Pontiac GMC Truck, Inc.*, 144 N.C. App. 589, 591, 551 S.E.2d 873, 875 (2001) (stating that "a litigant cannot deprive the trial court of jurisdiction to determine a case on its merits by appealing from a nonappealable interlocutory order of the trial court").

to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978). "Essentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment." *Goldston*, 326 N.C. at 726, 392 S.E.2d at 736. "The burden is on the appellant to establish that a substantial right will be affected unless he is allowed immediate appeal from an interlocutory order." *Embler v. Embler*, 143 N.C. App. 162, 166, 545 S.E.2d 259, 262 (2001).

Here, Defendants contend that their claim of sovereign immunity implicates a substantial right sufficient to warrant our immediate review. *See generally Petroleum Traders Corp. v. State*, 190 N.C. App. 542, 545, 660 S.E.2d 662, 664 (2008) ("[A]lthough Defendants' appeal is interlocutory, it is properly before us because orders denying dispositive motions grounded on the defense of governmental immunity are immediately reviewable as affecting a substantial right." (quotation marks and citation omitted)); *Kawai Am. Corp. v. Univ. of North Carolina at Chapel Hill*, 152 N.C. App. 163, 165, 567 S.E.2d 215, 217 (2002) ("This Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." (quotation marks and citation omitted)). Defendants cite *Smith v. Phillips*, 117 N.C. App. 378, 380, 451 S.E.2d 309, 311 (1994) for the proposition that "when [a] motion is made on the grounds of sovereign and qualified immunity, . . . a denial is immediately appealable, because to force a defendant to proceed with a trial from which he should be immune would vitiate the doctrine of sovereign immunity." The ACC takes no exception to these decisions, but contends they are inapplicable here because they deal with sovereign immunity defenses raised by the actual sovereign in its own courts. Here, as the ACC correctly asserts, sovereign immunity will only be extended to the State of Maryland, if at all, through the rule of comity. Accordingly, the ACC contends that Defendants are not entitled to comity as of right and that the State of Maryland therefore has no substantial right to appeal based on sovereign immunity in North Carolina's courts. Upon consideration of this distinction, we cannot agree with the ACC's argument.

The ability of a sister state to appeal an interlocutory order refusing to extend comity to that state's sovereign immunity request is a question of first impression in this Court. However, as to the rule of comity generally, our Supreme Court has said that

> comity is not a right of any State or country, but is permit-
> ted and accepted by all civilized communities from mutual
> interest and convenience, and from a sense of the incon-
> venience which would otherwise result, and from moral
> necessity to do justice in order that justice may be done
> in return.

*Cannaday v. Atl. Coast Line R.R. Co.*, 143 N.C. 439, 443-44, 55 S.E. 836, 838 (1906). Thus, while sister states have no legal right to comity, practical considerations warrant the conclusion that they should have comity decisions, particularly those relating to claims of sovereign immunity, reviewed by an appellate court on an interlocutory basis pursuant to N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d). The same considerations that permit the State of North Carolina to assert sovereign immunity in our courts lead us to this conclusion. Specifically, the defense of sovereign immunity is a material right of the State. *See, e.g., Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983) ("It has long been established that an action cannot be maintained against the State of North Carolina or an agency thereof unless it consents to be sued or upon its waiver of immunity, and that this immunity is absolute and unqualified." (emphasis removed)). Second, denial of a state's sovereign immunity claim works injury because it potentially forces a party who would otherwise be immune from suit to continue in the litigation. *Smith*, 117 N.C. App. at 380, 451 S.E.2d at 311.

Accordingly, because Defendants' underlying interest in asserting sovereign immunity is substantial, we will, with the aim of fostering beneficial relationships with our sister states and "doing justice in order that justice may be done in return," accept jurisdiction of Defendants' appeal pursuant to the authority conferred by N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d).

Notably, Defendants also contend that their appeal to this Court is permitted by N.C. Gen. Stat. § 1-277(b), which provides that "[a]ny interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant." Thus, because the order being appealed from denied Defendants' 12(b)(2) motion, Defendants contend that this Court has jurisdiction over this appeal under § 1-277(b). *See Data Gen. Corp. v. Cnty. of Durham*, 143 N.C. App. 97, 99-100, 545 S.E.2d 243, 245-46 (2001) (holding that a denial of a 12(b)(2) motion for lack of personal jurisdiction on the ground of sovereign immunity is immediately appealable).

However, while "[a] motion to dismiss based on sovereign immunity is a jurisdictional issue[,] whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction is unsettled in North Carolina." *M Series Rebuild, LLC v. Town of Mount Pleasant*, ___ N.C. App. ___, ___, 730 S.E.2d 254, 257 (2012). As our Supreme Court has noted:

> A viable argument may be propounded that the State, as a party, is claiming by the doctrine of sovereign immunity that the particular forum of the State courts has no jurisdiction over the State's person. On the other hand, the doctrine may be characterized as an objection that the State courts have no jurisdiction to hear the particular subject matter of [the] claims against the State. Although the federal courts have tended to minimize the importance of the designation of a sovereign immunity defense as either a Rule 12(b)(1) motion regarding subject matter jurisdiction or a Rule 12(b)(2) motion regarding jurisdiction over the person, the distinction becomes crucial in North Carolina because [N.C. Gen. Stat. §] 1-277(b) allows the immediate appeal of a denial of a Rule 12(b)(2) motion but not the immediate appeal of a denial of a Rule 12(b)(1) motion.

*Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327-28, 293 S.E.2d 182, 184 (1982) (internal citations omitted). Thus, because our case law remains ambiguous as to the type of jurisdictional challenge presented by a sovereign immunity defense, the ability of a litigant raising the defense to immediately appeal may vary, to some extent, based on the manner in which the motion is styled. For example, in *Data Gen. Corp.*, Durham County moved to dismiss the plaintiff's complaint on the grounds of sovereign immunity under Rules 12(b)(1) and 12(b)(2), which the trial court denied. 143 N.C. App. at 99, 545 S.E.2d at 245. On appeal, this Court held that Durham County's 12(b)(1) motion was not immediately appealable, but then decided the underlying sovereign immunity question on the basis of Durham County's 12(b)(2) motion. *Id.* at 99-100, 545 S.E.2d at 245-46. Here, we decline to determine this Court's jurisdiction on such formulaic grounds. Indeed, because we have already accepted substantial right jurisdiction pursuant to N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d), we leave the type of jurisdictional challenge presented by a sovereign immunity claim for resolution by a future court and refrain from addressing Defendants' contention that we have jurisdiction to hear their appeal pursuant to N.C. Gen. Stat. § 1-277(b).

### III. Standard of Review

[2] Having determined that this Court has jurisdiction to review Defendants' appeal, we now consider, also as a matter of first impression, the appropriate standard of review to apply to the trial court's comity decision. Defendants contend that the question of whether a North Carolina court should extend comity is a question of law reviewable *de novo*. For the following reasons, we agree.

As an initial matter, we note that the decision of whether to extend comity to a sister state's sovereign immunity request is solely determined by our state's common law. *See Nevada v. Hall*, 440 U.S. 410, 416 (1979) (holding that the United States Constitution does not entitle one state to sovereign immunity in a second state's courts and stating, "a claim of immunity in another sovereign's courts . . . necessarily implicates the power and authority of a second sovereign; its source must be found either in an agreement . . . or in the voluntary decision of the second to respect the dignity of the first as a matter of comity"). Thus, the United States Constitution, particularly the Eleventh Amendment, leaves the decision of whether to extend comity in such situations to each state's individual discretion.

Consistent with this view, our cases have emphasized the discretion that North Carolina enjoys in deciding whether the extension of comity is appropriate. *See Cox v. Roach*, ___ N.C. App. ___, ___, 723 S.E.2d 340, 345 (2012) (stating that "North Carolina courts are not required to respect Virginia's claim of sovereign immunity, [but] may do so as a matter of comity" (quotation marks and citation omitted)); *see also In re Chase*, 195 N.C. 143, 148, 141 S.E. 471, 473 (1928) ("While comity is a rule of practice and not a rule of law, it has substantial value in securing uniformity of decision; it does not command, but it persuades; it does not declare how a case shall be decided, but how with propriety it may be decided . . . [a]nd this is a matter which each state must decide itself."); *Sainz v. Sainz*, 36 N.C. App. 744, 749, 245 S.E.2d 372, 375 (1978) ("Comity rests in the discretion of the courts of the state in which enforcement is sought."). Based on these propositions, the ACC would have us review the trial court's decision under an abuse of discretion standard. However, while the decision as to whether comity should be extended in any given case has been assigned to the discretion of our courts as a general matter, it does not follow that our courts should leave each comity decision to the sound discretion of the trial judge.

On the contrary, our courts have chosen to apply a proposition of law when deciding whether the extension of comity is appropriate in a

given case, namely, that rights acquired under the laws or judgments of a sister state will be given force and effect in North Carolina if they are not against public policy. *Boudreau v. Baughman*, 322 N.C. 331, 341-42, 368 S.E.2d 849, 857-58 (1988); *Davis v. Davis*, 269 N.C. 120, 125, 152 S.E.2d 306, 310 (1967); *Howard v. Howard*, 200 N.C. 574, 579, 158 S.E. 101, 103 (1931); *In re Chase*, 195 N.C. at 148, 141 S.E. at 473; *Cox*, ___ N.C. App. at ___, 723 S.E.2d at 346. Such propositions of law are reviewed by this Court *de novo. State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) ("Conclusions of law are reviewed *de novo* and are subject to full review."). Accordingly, we review the trial court's decision to deny comity in this case *de novo*. "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quotation marks and citation omitted). Such a review will increase uniformity of decision across the state—a goal consistent with fostering mutual respect for and extending courtesy to our sister states.

## IV. Analysis

**[3]** Having determined that this Court has jurisdiction to hear Defendants' appeal and the appropriate standard of review, we now address whether the trial court erred in denying Defendants' motion to dismiss on the grounds of sovereign immunity. Defendants contend that the extension of comity in this case would not violate public policy and that they are entitled to sovereign immunity under the laws of Maryland. We disagree and affirm the trial court's order.

As previously stated, under the rule of comity in North Carolina, rights acquired under the laws or judgments of a sister state will be given force and effect in North Carolina if not against public policy.[6] *See, e.g.*, *Cox*, ___ N.C. App. at ___, 723 S.E.2d at 346. Moreover,

[t]o render foreign law unenforceable as contrary to pub-
lic policy, it must violate some prevalent conception of
good morals or fundamental principle of natural justice or

---

6. The rule and its rationale were reflected ably in the words of Chief Justice Taney in *Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519, 590 (1839): "The intimate union of these states, as members of the same great political family; the deep and vital interests which bind them so closely together; should lead us, in the absence of proof to the contrary, to presume a greater degree of comity, and friendship, and kindness towards one another, than we should be authorized to presume between foreign nations. And when (as without doubt must occasionally happen) the interest or policy of any state requires it to restrict the rule, it has but to declare its will, and the legal presumption is at once at an end."

involve injustice to the people of the forum state. This pub-
lic policy exception has generally been applied in cases
such as those involving prohibited marriages, wagers, lot-
teries, racing, gaming, and the sale of liquor.

*Id.* (quoting *Boudreau*, 322 N.C. at 342, 368 S.E.2d at 857—58) (quota-
tion marks omitted).

In the context of the sovereign immunity doctrine, our Supreme
Court has used public policy to effectively waive the State's sovereign
immunity in causes of action grounded in contract. *Smith v. State*, 289
N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976). In making this decision, the
*Smith* Court was moved by the following public policy considerations:

> (1) To deny the party who has performed his obligation
> under a contract the right to sue the state when it defaults
> is to take his property without compensation and thus
> to deny him due process; (2) To hold that the state may
> arbitrarily avoid its obligation under a contract after hav-
> ing induced the other party to change his position or to
> expend time and money in the performance of his obliga-
> tions, or in preparing to perform them, would be judicial
> sanction of the highest type of governmental tyranny; (3)
> To attribute to the General Assembly the intent to retain
> to the state the right, should expedience seem to make
> it desirable, to breach its obligation at the expense of its
> citizens imputes to that body "bad faith and shoddiness"
> foreign to a democratic government; (4) A citizen's peti-
> tion to the legislature for relief from the state's breach of
> contract is an unsatisfactory and frequently a totally inad-
> equate remedy for an injured party; and (5) The courts are
> a proper forum in which claims against the state may be
> presented and decided upon known principles.

*Id.* at 320, 222 S.E.2d at 423. Accordingly, public policy is violated in
North Carolina when the State is allowed to assert sovereign immunity
as a defense to causes of action based on contract. It would seem plain,
then, that because the ACC is seeking a declaration as to the parties'
rights and obligations under the terms of the ACC Constitution,[7] it would
violate public policy to extend comity to Defendants' claim of sovereign

---

7. The ACC Constitution was alleged in the ACC's complaint to be "a contract by and
among the member institutions, pursuant to which the members have agreed to conduct
the business affairs of the ACC."

immunity. To this line of reasoning, Defendants raise three objections that we address in turn.

First, Defendants contend that *Boudreau* limits the public policy exception to matters of marriages, family, and morals. *See Boudreau*, 322 N.C. at 342, 368 S.E.2d at 858 ("This public policy exception has generally been applied in cases such as those involving prohibited marriages, wagers, lotteries, racing, gaming, and the sale of liquor."). However, as the language of *Boudreau* makes clear, the examples provided therein are non-exclusive and merely represent what has qualified under the exception as a general matter. Moreover, other language in *Boudreau* is consistent with the policy considerations at issue in *Smith*. Compare *id.* at 342, 368 S.E.2d at 857-58 ("To render foreign law unenforceable as contrary to public policy, it must violate some prevalent conception of good morals or fundamental principle of natural justice *or involve injustice to the people of the forum state.*" (emphasis added)), with *Smith*, 289 N.C. at 320, 222 S.E.2d at 423 ("To hold that the state may arbitrarily avoid its obligation under a contract . . . would be judicial sanction of the highest type of governmental tyranny."). Thus, the language of *Boudreau* explicitly provides that any injustice to the people of the forum state implicates the public policy exception, not merely matters of marriages, family, and morals. Here, Defendants' are attempting to immunize themselves from a determination of their responsibilities under an alleged contract with the ACC—a North Carolina entity. Under the rationale of *Smith*, such an action violates public policy.

Second, Defendants contend that *Cox* stands for the proposition that "North Carolina courts extend sovereign immunity to and are to dismiss an action brought by North Carolina residents in North Carolina Courts against the educational institutions of sister states which enjoy sovereign immunity in the courts of those states." In *Cox*, this Court extended comity to the University of Virginia's claim of sovereign immunity and affirmed the trial court's decision to grant the University's motion to dismiss. *Cox*, ___ N.C. App. at ___, 723 S.E.2d at 346-47.

However, it does not follow that because we decided to extend comity to the University of Virginia in *Cox* we must, *ipso facto*, extend sovereign immunity to all the educational institutions of our sister states irrespective of the attendant circumstances. *Cox* is distinguishable from the present case because it dealt with tort claims being asserted against the University of Virginia, not a cause of action on a contract. *See id.* at ___, 723 S.E.2d at 342; *see also Kawai*, 152 N.C. App. at 166, 567 S.E.2d at 217 (" 'Suits against the State, its agencies and its officers for alleged tortious acts can be maintained only to the extent

authorized by the Tort Claims Act, and that Act authorizes recovery only for negligent torts. Intentional torts committed by agents and officers of the State are not compensable under the Tort Claims Act.' " (quoting *Wojsko v. State*, 47 N.C. App. 605, 610, 267 S.E.2d 708, 711 (1980)). Thus, at least with respect to torts not covered by the Torts Claims Act, the state is entitled to defend tort suits by claiming sovereign immunity. Such a defense does not contravene public policy in North Carolina. Thus, this Court properly extended comity to the University of Virginia in *Cox*. Here, however, extending comity to Defendants in a cause of action based on an alleged contract would violate the clear public policy articulated in *Smith*. For these reasons, the same principles that we applied in *Cox* lead us to the opposite conclusion here—comity will not be extended to allow Defendants to escape a determination as to their rights and obligations under an alleged contract.

Third, Defendants contend that the holding in *Smith*—that the State has no sovereign immunity defense in causes of action based on contract—is limited to actions claiming a breach of contract. Accordingly, Defendants contend that because the ACC seeks declaratory relief, the waiver found in *Smith* does not apply and Defendants are entitled to sovereign immunity.

As an initial matter, we note that even though the underlying claim in *Smith* was for breach of contract, our Supreme Court did not limit its holding to such actions:

> We hold, therefore, that whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract. Thus, in this case *and in causes of action on contract* arising after the filing date of this opinion, . . . the doctrine of sovereign immunity will not be a defense to the State. The State will occupy the same position as any other litigant.

*Smith*, 289 N.C. at 320, 222 S.E.2d at 423-24 (emphasis added). Nevertheless, Defendants cite *Petroleum Traders Corp.* for the proposition that sovereign immunity bars a declaratory judgment claim concerning a contract with the State. However, *Petroleum Traders Corp.* did not involve a declaratory judgment action seeking to ascertain the rights and obligations owed by the parties under the terms of an existing contract. Rather, the plaintiff in that case sought a declaration that a statutorily authorized bidding fee, which is charged against the

vendor with the winning bid, violated the North Carolina Constitution. *See Petroleum Traders Corp.*, 190 N.C. App. at 545, 660 S.E.2d at 663. We held that the Declaratory Judgment Act does not act as a general waiver of the State's sovereign immunity. *Id.* at 547, 660 S.E.2d at 664. Here, the ACC argues that *Smith*, not the Declaratory Judgment Act, acts as a waiver to Defendants' claim of sovereign immunity.

Furthermore, even though the underlying claim in *Smith* was for breach of contract, the public policy considerations underlying the Court's rationale are equally persuasive here. Specifically, we are moved by the consideration in *Smith* that

> [t]o hold that the state may arbitrarily avoid its obligation under a contract after having induced the other party to change his position or to expend time and money in the performance of his obligations, or in preparing to perform them, would be judicial sanction of the highest type of governmental tyranny.

*Smith*, 289 N.C. at 320, 222 S.E.2d at 423. The Court's holding in *Smith* explicitly waived the State's sovereign immunity in "causes of action on contract" and we can discern no sound reason to limit that language to breach of contract claims when the Court's stated rationale is equally persuasive with respect to declaratory relief actions seeking to ascertain the rights and obligations owed under an alleged contract. *See Ferrell v. Dep't of Transp.*, 334 N.C. 650, 654-55, 435 S.E.2d 309, 312-13 (1993) (relying on the public policy considerations articulated in *Smith* to find a waiver of the State's sovereign immunity in a declaratory judgment action). Such declaratory relief actions are a "cause of action on contract" sufficient to waive the State's sovereign immunity.

Accordingly, because the public policy of this state does not allow the State of North Carolina to avoid its obligations in contract, we cannot extend comity to Defendants' claim of sovereign immunity. Furthermore, because we find that the extension of comity in this case would violate public policy, we decline to consider—as would be required if we had reached the opposite conclusion—whether Defendants would be entitled to sovereign immunity as a matter of Maryland law.[8]

---

8. Indeed, pursuant to the rule of comity, rights acquired under the laws or judgments of a sister state will be given force and effect in North Carolina if not against public policy. *Cox*, ___ N.C. App. at ___, 723 S.E.2d at 346. Thus, had we determined that public policy permitted the extension of comity in this case, the burden would still be on Defendants to show that they would be entitled to sovereign immunity under Maryland law. In light of our holding, however, we decline to address this issue.

## V. Conclusion

For the foregoing reasons, we affirm the order of the trial court denying Defendants' motion to dismiss and terminate the stay entered by this Court on 18 April 2013.

Affirmed.

Judges ERVIN and DILLON concur.