Orbitz, LLC v. Hoyle, 2013 NCBC 33.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF WAKE | SUPERIOR COURT DIVISION 11 CVS 1857 |

ORBITZ, LLC; TRIP NETWORK, INC. (d/b/a CHEAPTICKETS.COM); TRAVELOCITY.COM L.P.; TRAVELSCAPE, LLC; HOTELS.COM, L.P. and HOTWIRE, INC.,

          Plaintiffs,

v.

DAVID HOYLE, SECRETARY OF REVENUE OF THE STATE OF NORTH CAROLINA; THE NORTH CAROLINA DEPARTMENT OF REVENUE and DURHAM COUNTY,

          Defendants.

**AMENDED ORDER AND OPINION**

*Williams, Mullen, Maupin, Taylor, P.A. by Charles Neely, Jr., Nancy S. Rendleman, and Robert W. Shaw for Plaintiffs.*

*McDermott Will & Emery, LLP by Elizabeth B. Herrington, Jane Wells May, and Michael W. Weaver for Plaintiffs Orbitz, LLC and Trip Network, Inc. (d/b/a Cheaptickets.com).*

*Alston & Bird, LLP by Jon G. Shepherd for Plaintiff Travelocity.com, L.P.*

*Sutherland Asbill & Brennan, LLP by Jeffrey A. Friedman and A. Pilar Mata for Plaintiffs Travelscape, LLC, Hotels.com, L.P., and Hotwire, Inc.*

*Attorney General Roy Cooper by Special Deputy Attorney General Kay Linn Miller Hobart for Defendants Secretary David Hoyle and the North Carolina Department of Revenue.*

*Durham County Attorney's Office by Assistant Durham County Attorney Marie Inserra for Defendant Durham County.*

Murphy, Judge.

{1} THIS MATTER is before the Court on Defendants David Hoyle ("Hoyle") and the North Carolina Department of Revenue's ("Department of Revenue") (collectively the "State") Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the North Carolina Rules of Civil Procedure, and Defendant Durham County's

("Durham") Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6); N.C. Gen. Stat. § 1-75.3 (2011); and N.C. Gen. Stat. § 1-77 (2011).[1] After considering the motions, the parties' briefs in support and opposition, and the arguments made by counsel during a hearing on Defendants' motions on November 18, 2011, the Court: DENIES Defendant Durham's Motion to Dismiss pursuant to Rule 12(b)(1); DENIES Defendant Durham's Motion to Dismiss pursuant to N.C. Gen. Stat. § 1-75.3; GRANTS in part, and DENIES in part Defendants' Motions to Dismiss pursuant to Rules 12(b)(2), and 12(b)(6); and DENIES Defendant Durham's Motion to Dismiss pursuant to Rule 12(b)(3) and N.C. Gen. Stat. § 1-77.

## I.
## PROCEDURAL HISTORY

{2}   Plaintiffs filed their Complaint on February 4, 2011, requesting a declaratory judgment that the amendments to N.C. Gen. Stat. §§ 105-164.4, 105-164.4B, 153A-155, and 160A-215 (the "Amendments") included in the Current Operations and Capital Improvements Appropriations Act of 2010 are: (1) in violation of the: Internet Tax Freedom Act, the Contracts Clause of the United States Constitution, the Commerce Clause of the United States Constitution, the Equal Protection Clause of the United States Constitution, the Equal Protection Clause of the North Carolina Constitution, and the Uniformity Clause of the North Carolina Constitution, and (2) void for vagueness. (Compl. ¶¶ 94–203.)

{3}   Durham and the State filed their motions to dismiss on April 15, 2011, and April 18, 2011, respectively, and a hearing on the motions was held on November 18, 2011.

## II.
## FACTUAL BACKGROUND

{4}   The Court does not make findings of fact in connection with motions to

---

[1] "A motion to dismiss for improper venue [will] be treated as a removal action." *WNC Holdings, LLC v. Aliance Bank & Trust, Co.*, 2012 NCBC 50 ¶ 31 (N.C. Super. Ct. Oct. 2, 2012), http://www.ncbusiness court.net/opinions/2012_NCBC_50.pdf (citing *State v. Fayetteville St. Christian Sch.,* 299 N.C. 351, 357, 261 S.E.2d 908, 912, *appeal dismissed,* 449 U.S. 807 (1980)).

dismiss pursuant to Rule 12(b)(6), as such motions "do[] not present the merits, but only whether the merits may be reached." *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). Accordingly, for the purposes of analyzing Defendants' Rule 12(b)(6) motions, the Court recites only those facts alleged in the Complaint that are relevant to the Court's legal determinations.

{5}     Plaintiffs are foreign corporations commonly known as online travel companies. (Compl. ¶¶ 10–15, 46.) As online travel companies, Plaintiffs serve as third-party intermediaries between travel suppliers (hotel operators, airlines, rental car companies, etc.) and consumers looking to purchase travel-related goods and services. (Compl. ¶¶ 42–43.) Like travel agents, Plaintiffs collect travel-related information, provide vacation planning tools, and allow consumers to make hotel, air, and auto reservations through the companies' websites ("Travel Facilitation Services"). (Compl. ¶ 47.)

{6}     Plaintiffs generally book hotel reservations for consumers on a prepaid basis that requires payment for the hotel stay when a reservation is made. (Compl. ¶ 50.) Plaintiffs refer to this as the Prepaid Model. (Compl. ¶ 50.)

{7}     Plaintiffs allege that under the Prepaid Model, a consumer enters into two simultaneous transactions. The first, between the consumer and the hotel operator (Holiday Inn®, Hilton®, Hampton Inn®, etc.), is for the rental of an accommodation (the "Room Rental Charge"). (Compl. ¶ 52.) The second, between the consumer and a Plaintiff, compensates a Plaintiff for its Travel Facilitation Services (the "Facilitation Fee"). (Compl. ¶ 53.)

{8}     Under the Prepaid Model, Plaintiffs forward the Room Rental Charge and a tax recovery charge to the hotel operator. (Compl. ¶¶ 58–59.) The tax recovery charge is intended to cover all anticipated state and local taxes charged by the hotel operator to the consumer. (Compl. ¶¶ 58–59.)

{9}     North Carolina imposes a Sales Tax as part of a combined sales and use tax. (Compl. ¶ 63.) It applies to the rental of hotel rooms and is a tax on retailers for the privilege of engaging in the business of retailing. (Compl. ¶¶ 65, 72.) While

the Sales Tax is imposed on the retailer, the law allows it to be passed on to the consumer. (Compl. ¶ 70.)

{10} In addition to the Sales Tax, Durham imposes a tax on the rental of hotel rooms within the County (the "Room Occupancy Tax"). The Room Occupancy Tax is only imposed on room rentals subject to the Sales Tax. (Compl. ¶ 75.)

{11} Before the Amendments were adopted, the Sales Tax and Room Occupancy Tax were assessed on retailers' gross receipts. (Compl. ¶ 76.) These receipts did not include Facilitation Fees charged by Plaintiffs. (Compl. ¶ 77.) However, with the passage of the Amendments, gross receipts were redefined to include "charges designated as facilitation fees and any other charges necessary to complete the rental." N.C. GEN. STAT. § 105-164.4(a)(3) (2011). Plaintiffs argue that these changes unfairly tax Facilitation Fees collected in transactions solely between consumers and Plaintiffs. (Compl. ¶ 84.)

{12} The Amendments also created a new category of participant in the Sales Tax collection process. These participants, called facilitators, are defined as "[a] person who is not a rental agent and who contracts with a provider of an accommodation to market the accommodation and to accept payment from the consumer for the accommodation." *Id.* at § 105-164.4(a)(3)(b). Plaintiffs acknowledge that they qualify as facilitators under the Amendments. (Compl. ¶ 80.) Facilitators must report to the retailer the sales price a consumer pays for the room rental, send the retailer the tax due on the sales price within three days of notification from the retailer that a room rental transaction is completed, and are liable for all taxes due on the sales price that are not sent to the retailer. *Id.* at § 105-164.4(a)(3).

{13} Under the provisions of the Sales Tax, the obligations imposed by the Amendments on retailers and facilitators are to be "considered terms of the contract between the retailer and the facilitator." *Id.*

{14} As part of the statutory scheme imposing the Sales Tax, the State provides taxpayers with the ability to challenge the amount of tax they are assessed. N.C. GEN. STAT. § 105-241.17 (2011). Plaintiffs did not comply with the

conditions for filing an action to challenge the constitutionality of a tax statute provided under Section 105-241.17.

## III.

## PRINCIPLES OF LAW

### A.

### STANDARDS OF REVIEW

#### 1.

#### MOTION TO DISMISS FOR LACK OF STANDING PURSUANT TO RULE 12(B)(1)

{15}    Standing is a question of subject matter jurisdiction, and a prerequisite to the exercise of authority by our courts. *Street v. Smart Corp.*, 157 N.C. App. 303, 305, 578 S.E.2d 695, 698 (2003); *Neuse River Foundation, Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002). "'If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim.'" *Prop. Rights Advocacy Grp. v. Town of Long Beach*, 173 N.C. App. 180, 182, 617 S.E.2d 715, 717 (2005) (quoting *Estate of Apple v. Commercial Courier Express, Inc.*, 607 S.E.2d 14, 16 (2005)), *aff'd* 360 N.C. 474, 628 S.E.2d 768 (2006).

{16}    "'Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter.'" *Id.* (quoting *Street*, 157 N.C. App. at 305, 578 S.E.2d at 698).

#### 2.

#### MOTION TO DISMISS BASED ON SOVEREIGN IMMUNITY PURSUANT TO RULES 12(B)(2) AND 12(B)(6)

{17}    The North Carolina Court of Appeals has held that "a motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction . . . ." *Data Gen. Corp. v. Cnty. of Durham*, 143 N.C. App. 97, 100, 545 S.E.2d 243, 246 (2001); *see also Green v. Kearney*, 203 N.C. App. 260, 690 S.E.2d 755 (2010). However, the Court of Appeals has also held that "a Rule 12(b)(6) motion to dismiss based on sovereign immunity affects a substantial right and is therefore immediately appealable." *Meherrin Indian Tribe*

*v. Lewis*, 197 N.C. App. 380, 385, 677 S.E.2d 203, 207 (2009).

{18}    "With respect to a motion to dismiss based on sovereign immunity, the question is whether the complaint 'specifically allege[s] a waiver of governmental immunity.  Absent such an allegation, the complaint fails to state a cause of action.'" *Sanders v. State Pers. Comm'n*, 183 N.C. App. 15, 19, 644 S.E.2d 10, 13 (2007) (quoting *Fabrikant v. Currituck Cnty.*, 174 N.C. App. 30, 38, 621 S.E.2d 19, 25 (2005) (alteration in original).  "'[P]recise language alleging that the State has waived the defense of sovereign immunity is not necessary,' but, rather, the complaint need only 'contain[] sufficient allegations to provide a reasonable forecast of waiver.'" *Sanders*, 183 N.C. App. at 19, 644 S.E.2d at 13 (quoting *Fabrikant*, 174 N.C. App. at 38, 621 S.E.2d at 25) (alteration in original).

3.

MOTION TO DISMISS PURSUANT TO RULE 12(B)(3)

{19}    A motion to dismiss for improper venue should be treated as a removal action. *State v. Fayetteville St. Christian Sch.*, 299 N.C. 351, 357, 261 S.E.2d 908, 912, *appeal dismissed*, 449 U.S. 807 (1980).  The trial court must transfer an action if it has been brought in the wrong county and a party has properly objected to venue. *Hawley v. Hobgood*, 174 N.C. App. 606, 609, 622 S.E.2d 117, 119 (2005). Actions "[a]gainst a public officer or person especially appointed to execute his duties," N.C. GEN. STAT. § 1-77(2), "must be tried in the county where the cause, or some part thereof, arose . . . ." *Id.* at § 1-77.  These requirements also apply to counties. *Coats v. Sampson Cnty. Mem'l Hosp., Inc.*, 264 N.C. 332, 333–35, 141 S.E.2d 490, 491–92 (1965).

B.

ANALYSIS

1.

THE SALES AND OCCUPANCY TAXES

a.

STATE SALES TAX

{20}    North Carolina's Sales Tax is imposed on retailers.  N.C. GEN. STAT. § 105-

164.4(a). The Sales Tax applies to the rental of hotel rooms, and levies "[a] tax at the general rate . . . [on] the gross receipts derived from the rental of an accommodation." *Id.* at § 105-164.4(a)(3). "A person who provides an accommodation that is offered for rent is considered a retailer under the [Sales Tax]." *Id.* Gross receipts "include the sales price of the rental . . . [and] [t]he sales price . . . is determined as if the rental were . . . of tangible personal property. . . . [R]ental[s] . . . marketed by a facilitator include[] charges designated as facilitation fees and any other charges necessary to complete the rental." *Id.* Facilitators are defined as any "person who is not a rental agent and who contracts with a provider of an accommodation to market the accommodation and to accept payment from the consumer for the accommodation." *Id.* at § 105-164.4(a)(3)(b).

{21} In addition to imposing the Sales Tax on gross receipts, Section 105-164.4(a)(3) requires "[a] retailer . . . [to] notify a facilitator when an accommodation rental marketed by the facilitator is completed and, within three business days of receiving the notice, the facilitator must send the retailer the portion of the sales price the facilitator owes the retailer and the tax due on the sales price." *Id.* A facilitator that fails to send the Sales Tax within the required period of time "is liable for the amount of tax the facilitator fails to send." N.C. GEN. STAT. § 105-164.4(a)(3). "A retailer is not liable for tax due but not received from a facilitator[, and] [t]he requirements imposed by [Section 105-164.4(a)(3)] on a retailer and a facilitator are considered terms of the contract between the retailer and the facilitator." *Id.*

b.

DURHAM'S OCCUPANCY TAX

{22} In addition to the Sales Tax, hotel room rentals in Durham County are also subject to a Room Occupancy Tax. N.C. GEN. STAT. § 153A-155(a). Under the Room Occupancy Tax, "[a] retailer who is required to remit to the Department of Revenue the [Sales Tax] imposed by G.S. 105-164.4(a)(3) . . . is required to remit a room occupancy tax to the taxing county." *Id.* at § 153A-155(c). "The room occupancy tax applies to the same gross receipts as the [Sales Tax] on

accommodations and is calculated in the same manner as that tax." *Id.* "A . . . facilitator, as defined in G.S. 105-164.4(a)(3), has the same responsibility and liability under the room occupancy tax as the . . . facilitator has under the [Sales Tax] on accommodations." *Id.* The taxing county must administer its own Room Occupancy Tax. *Id.* § 153A-155(d).

## 2.

## STANDING

{23}   Durham argues that Plaintiffs lack standing to pursue their claims because: (1) Plaintiffs have not been injured and therefore do not have a sufficient stake in the controversy, and (2) Plaintiffs have accepted benefits under the statutes and are therefore barred under the doctrine of quasi-estoppel from challenging the constitutionality of the statutes. (Def. Durham's Br. Supp. Mot. Dismiss ("Durham's Mot. Dismiss") 6–7.)

### a.

### INJURY

{24}   As a prerequisite to subject matter jurisdiction, every plaintiff must have standing to pursue the claims alleged in their complaint. *See Prop. Rights Advocacy Grp.,* 173 N.C. App. at 182, 617 S.E.2d at 717. "'[S]tanding to challenge the constitutionality of a legislative enactment exists where the litigant has suffered, or is likely to suffer, a direct injury as a result of the law's enforcement.'" *Prop. Rights Advocacy Grp.,* 173 N.C. App. at 183, 617 S.E.2d at 717–18 (quoting *Maines v. City of Greensboro*, 300 N.C. 126, 130–31, 265 S.E.2d 155, 158 (1980)).

{25}   Plaintiffs allege that enforcement of the Amendments will impose a discriminatory tax on their facilitation fees (Compl. ¶ 84), that the enactment of the Amendments placed unreasonable reporting requirements on the Plaintiffs (Compl. ¶ 85), and that the statutes' amendment of existing contracts between Plaintiffs and retailers is unconstitutional. (Compl. ¶¶ 85–86, 106–17.) These allegations are sufficient to show that Plaintiffs have suffered injury by enactment of the Amendments, and will likely suffer additional injury through the enforcement of their provisions. Accordingly, the Court concludes that Plaintiffs have alleged a

sufficient stake in this controversy to properly seek adjudication of their claims.

b.

## QUASI-ESTOPPEL

{26}    Under the doctrine of quasi-estoppel, "'one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens.'" *Shell Island Homeowners Asso., Inc. v. Tomlinson*, 134 N.C. App. 217, 226, 517 S.E.2d 406, 413 (1999) (quoting *Bailey v. State of North Carolina,* 348 N.C. 130, 147, 500 S.E.2d 54, 64 (1998)). "Th[is] principle is an application of the broader doctrine of quasi-estoppel, which states that 'where one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it.'" *Id.* (quoting *Carolina Medicorp, Inc. v. Bd. of Trs,* 118 N.C. App. 485, 492–93, 456 S.E.2d 116, 120 (1995)). "Moreover, the acceptance of benefits precludes a subsequent inconsistent position, even where acceptance is involuntary, arises by necessity, or where, . . . a party voluntarily accepts a benefit in order to avoid the risk of harm." *Shell Island Homeowners Asso., Inc.*, 134 N.C. App. at 226, 517 S.E.2d at 413 (citing *Carolina Medicorp, Inc.*, 118 N.C. App. at 493, 456 S.E.2d at 121).

{27}    "[A] complaint may be dismissed pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on estoppel grounds . . . ." *Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 658 n.6, 689 S.E.2d 143, 152 n.6 (2009) (citing *Shell Island Homeowners Asso., Inc.*, 134 N.C. App. at 226, 517 S.E.2d at 413).

{28}    Durham argues that Plaintiffs should be estopped from challenging the constitutionality of the Amendments because Plaintiffs have accepted the benefits of the statutes. Specifically, Durham argues that: (1) Plaintiffs benefit by collecting taxes on the higher room rate Plaintiffs charge consumers while only remitting to Defendants an amount based on the discounted room rates Plaintiffs pay retailers (Durham's Mot. Dismiss 6–7), and (2) Plaintiffs benefit from Durham's use of Room Occupancy Tax revenues to support tourism because it makes the County an attractive location to visit and therefore increases consumers' use of Plaintiffs'

services.  (Durham's Mot. Dismiss 7–8.)

{29}     Despite Durham's contentions, the Court finds no evidence, other than the arguments made in Durham's unverified Motion to Dismiss, to suggest that Plaintiffs pocket the Sales and Room Occupancy Taxes they collect from consumers. In addition, Durham has not presented any data linking the use of Room Occupancy Tax revenues on tourism to increased sales for Plaintiffs.  Lastly, this Court cannot find, and Durham fails to cite, any case law supporting the proposition that a party should be estopped from challenging a tax statute when the government can show some conceivable, however attenuated, benefit to the party through the government's allocation of tax revenues.  Accordingly, the Court concludes that Plaintiffs have not accepted a benefit under the statutes and are therefore not barred under the doctrine of quasi-estoppel from challenging the constitutionality of the Amendments.  Therefore, the Court DENIES Durham's Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6).

3.

SOVEREIGN IMMUNITY

{30}     To decide whether Defendants are protected from suit by sovereign immunity the Court must determine: (1) whether the doctrine applies to the Defendants, (2) whether the doctrine was waived, and (3) whether adequate remedies are provided to protect Plaintiffs' constitutional rights.

a.

DOES SOVEREIGN IMMUNITY PROTECT DEFENDANTS FROM SUIT?

{31}     Under the doctrine of sovereign immunity:

> a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit.

> By application of this principle, a subordinate division of the state, or agency exercising statutory governmental functions . . . may be sued only when and as authorized by statute.

*N.C. Ins. Guar. Ass'n. v. Bd. of Trs. of Guilford Tech. Cmty. College*, 364 N.C. 102, 107, 691 S.E.2d 694, 697 (2010) (quoting *Smith v. Hefner*, 235 N.C. 1, 6, 68 S.E.2d

783, 787 (1952)).

{32} Because sovereign immunity protects the State as well as its subordinate agencies, the doctrine also protects the Secretary of Revenue and North Carolina's counties from suit. *Buchan v. Shaw*, 238 N.C. 522, 523, 78 S.E.2d 317, 317 (1953); *Archer v. Rockingham Cnty.*, 144 N.C. App. 550, 554, 548 S.E.2d 788, 790 (2001). Sovereign immunity can only be set aside when it is explicitly waived. *Guthrie v. North Carolina State Ports Auth.*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983).

{33} Defendants are the Secretary of Revenue of the State of North Carolina, the North Carolina Department of Revenue, and Durham County. Accordingly, under *N.C. Ins. Guar. Ass'n.*, *Buchan*, and *Archer*, Defendants are entitled to the protection of sovereign immunity absent an effective waiver.

b.

WAS SOVEREIGN IMMUNITY WAIVED?

{34} Waiver can occur by statutory authorization, *id.* at 522, 299 S.E.2d at 618, or under the common law. *See Corum v. Univ. of N. Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992); *see also Richmond Cnty. Bd. of Educ. v. Cowell*, 2013 N.C. App. LEXIS 178 *8 (2013). "It is for the General Assembly to determine when and under what circumstances the State may be sued. When statutory provision has been made for an action against the State, the procedure prescribed by statute must be followed, and the remedies thus afforded are exclusive." *Great Am. Ins. Co. v. Gold*, 254 N.C. 168, 173, 118 S.E.2d 792, 795 (1961). Accordingly, "[t]he right to sue the State is a conditional right, and the terms prescribed by the Legislature are conditions precedent to the institution of the action." *Id.*

{35} While sovereign immunity is "absolute and unqualified," *Guthrie,* 307 N.C. at 534, 299 S.E.2d at 625, it is a "judge-made [law] in North Carolina . . . ." *Corum,* 330 N.C. at 785, 413 S.E.2d at 291. "[S]overeign immunity is not a constitutional right[,] [but rather] a common law theory or defense established by th[e] [c]ourt[s] . . . ." *Id.* at 786, 413 S.E.2d at 292. The status of sovereign immunity as a common law theory or defense requires that "when there is a clash between . . . constitutional rights and sovereign immunity, the constitutional rights

must prevail." *Id.*

{36} N.C. Gen. Stat. § 105-241.17 provides that "[a] taxpayer who claims . . . a tax statute is unconstitutional may bring a civil action in . . . Superior Court . . . to determine the taxpayer's liability under that statute if *all* of the conditions in this section are met." N.C. GEN. STAT. § 105-241.17 (emphasis added). From this language, the Court concludes that Section 105-241.17 provides an explicit statutory waiver of sovereign immunity, and a remedy for taxpayers, subject to certain conditions, that allows an action to be brought challenging the constitutionality of the State Sales Tax.

{37} While the Court concludes that Section 105-241.17 provides a statutory waiver and remedy, that conclusion does not determine: (a) whether Section 105-241.17's waiver and remedy apply to Durham's Room Occupancy Tax, (b) whether the remedy provided is available to Plaintiffs, or (c) whether the remedy is adequate to protect Plaintiffs' constitutional rights. Because Plaintiffs allege violations of their constitutional rights, as a matter of law, if the Court concludes that the remedy is either unavailable or inadequate, a common law waiver to sovereign immunity exists, and would, if properly pled, allow Plaintiffs to bring this action. *Corum*, 330 N.C. at 786, 413 S.E.2d at 292. The Court evaluates each question in turn.

c.

## DOES SECTION 105-241.17'S REMEDY APPLY TO DURHAM'S ROOM OCCUPANCY TAX?

{38} Section 105-241.17's remedy only applies to "Subchapters I, V, and VIII of . . . Chapter [105] . . . ." N.C. GEN. STAT. § 105-228.90 (2011). Its remedy was incorporated, along with other enforcement provisions, into the administration and enforcement provisions of the Sales Tax by N.C Gen. Stat. § 105-164.44. Plaintiffs argue that Section 105-241.17's remedy and associated enforcement provisions do not apply to the Room Occupancy Tax (Compl. ¶ 27), and that Durham has not provided any administrative remedies to dispute the tax. (Compl. ¶ 28; Pls. Resp. Def. Durham's Mot. to Dismiss 20–21.)

{39}    Unlike the provisions of the State Sales Tax, Durham's Room Occupancy Tax was authorized by 1985 N.C. Sess. Laws Ch. 969, amended by subsequent session laws, and is subject to the uniformity provisions of N.C. Gen. Stat. § 153A-155.  (Def. Durham's Reply Pls.' Opp'n Durham's Mot. to Dismiss ("Durham's Reply") 2–8.)  While the Room Occupancy Tax and Section 153A-155 rely on provisions in Subchapter I of Chapter 105, *see, e.g.,* N.C. Gen. Stat. § 153A-155(c–e), the Room Occupancy Tax and Section 153A-155 are not part of the Sales Tax or Subchapter I, V, or VIII of Chapter 105.  Accordingly, the Court concludes that the waiver and remedies provided in Section 105-241.17, and the remedies and penalties incorporated by Section 105-164.44, do not apply to Durham's Room Occupancy Tax.

{40}    In addition, Durham has not independently adopted, through its powers to administer the tax, a waiver of sovereign immunity or remedies to challenge the Room Occupancy Tax.  (Compl. ¶¶ 27–28; Pls. Resp. Durham's Mot. to Dismiss 17–22); *see also* N.C. GEN. STAT. § 153A-155(d).  Without a waiver or remedy allowing Plaintiffs to challenge the constitutionality of the Room Occupancy Tax, Plaintiffs can not enforce their rights under the North Carolina Constitution.  Accordingly, Plaintiffs have properly pled a common law waiver to Durham's sovereign immunity and therefore may bring a direct action against Durham under the North Carolina Constitution.  *Corum*, 330 N.C. at 784, 413 S.E.2d at 291.

d.

IS SECTION 105-241.17'S REMEDY FOR CHALLENGING THE SALES TAX ADEQUATE AND AVAILABLE TO PLAINTIFFS?

(1)

SECTION 105-241.17'S REMEDY

{41}    Section 105-241.17 allows taxpayers that claim a tax statute is unconstitutional to bring a civil action to determine the taxpayer's liability if all of the following conditions are met:

> (1) The taxpayer [must] exhaust[] the prehearing remedy by receiving a final determination after a review and a conference.

(2) The taxpayer [must] commence[] a contested case at the Office of Administrative Hearings.

(3) The Office of Administrative Hearings [must] dismiss[] the contested case petition for lack of jurisdiction because the sole issue is the constitutionality of a statute and not the application of a statute.

(4) The taxpayer . . . [must] pa[y] the amount of tax, penalties, and interest the final determination states is due.

(5) The civil action [must be] filed within two years of the dismissal.

N.C. GEN. STAT. §§ 105-241.17(1–5).

(2)

ARE PLAINTIFFS TAXPAYERS?

{42}    Section 105-241.17's remedy only applies to taxpayers. Accordingly, Plaintiffs can only access that remedy if they are "subject to the tax or reporting requirements of Subchapter I, V, or VIII of . . . Chapter [105,] of Article 12 of Chapter 113A of the General Statutes, or of Article 3 of Chapter 119 of the General Statutes." N.C. GEN. STAT. § 105-228.90(b)(8).

{43}    The tax and reporting requirements of Subchapter I of Chapter 105 include the State Sales Tax provisions imposed under Section 105-164.4. The Sales Tax provides that the tax "is imposed on a retailer . . . [and that] [a] person who provides an accommodation that is offered for rent is considered a retailer under th[e] [Sales Tax]." N.C. GEN. STAT. §§ 105-164.4(a)–(a)(3). While Plaintiffs acknowledge that they are considered facilitators under the Sales Tax, that designation only requires them to: (1) report to the retailer the sales price paid by a consumer for an accommodation, and (2) send the retailer its portion of the sales price and the tax due on the rental within three days notice that an accommodation rental has been completed. N.C. GEN. STAT. § 105-164.4(a)(3). The only other relevant provision applicable to Plaintiffs provides that "[a] facilitator that does not send the retailer the tax due on the sales price is liable for the amount of tax the facilitator fails to send." *Id.*

{44}    Based on the terms of the Sales Tax, the first requirement placed on

Plaintiffs is a reporting requirement,[2] the second, is a tax transfer requirement that obligates Plaintiffs to transfer the tax from consumers who pay the tax, to retailers on whom the tax is levied. N.C. GEN. STAT. § 105-164.4(a)(3)*; see also* N.C. GEN. STAT. § 105-164.7 (stating that the Sales Tax is "intended to be passed on to the purchaser . . . and borne by the purchaser instead of by the retailer."). As for the liability provision, it is not a requirement under the Sales Tax, but rather a penalty on facilitators that fail to comply with the tax transfer requirement. *See* N.C. GEN. STAT. § 105-164.4(a)(3). In addition, this liability would most likely be imposed only after a facilitator was found responsible for failing to comply with the tax transfer provision of the Sales Tax.

{45}     Plaintiffs are facilitators and thus subject to the reporting requirements of Section 105-164.4(a)(3). Accordingly, the Court concludes that Plaintiffs are taxpayers as defined by Section 105-228.90(b)(8) solely because they are subject to the reporting requirements of Section 105-164.4(a)(3). Plaintiffs' status as taxpayers presumably allows them to utilize Section 105-241.17's waiver and remedy. Accordingly, the Court must next determine whether Section 105-241.17's remedy is adequate.

---

[2] The Court notes that the obligation imposed on facilitators to "*report* to the retailer . . . the sales price a consumer pays . . . for an accommodation . . . [,]" N.C. Gen. Stat. § 105-164.4(a)(3) (emphasis added), is unlike other "reporting requirements" in Section 105, which arguably calls into question whether the Legislature intended it to be sufficient to qualify someone as a "taxpayer" under Section 105-228.90(b)(8). Article 5 (the article governing the State Sales Tax) includes specific reporting requirements in Part 4 of the Article (which is titled "Reporting and Payment"). *See e.g.* N.C. Gen. Stat. § 105-164.16 (2011). Other reporting requirements within the relevant statutes mandate that reports be filed with a taxing authority rather than a private entity as required by Section 105-164.4. *See id.* However, when "the language of a statute is free from ambiguity and expresses a single, definite, and sensible meaning, judicial interpretation is unnecessary and the plain meaning of the statute controls." *Mazda Motors of Am., Inc. v. Sw. Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979) (citing *Institutional Food House, Inc. v. Coble*, 289 N.C. 123, 221 S.E.2d 297 (1976). Here, the Court deems itself constrained by the Legislature's use of the words "reporting requirement" in Section 105-228.90, and concludes that inclusion of the word "report" in Section 105-164.4(a)(3) is clear, and free of ambiguity. Accordingly, the Court gives those terms their ordinary meaning when interpreting the relevant statutes. *Abernethy v. Bd. of Comm'rs*, 169 N.C. 631, 635, 86 S.E. 577, 579 (1915).

## IS SECTION 105-241.17'S REMEDY ADEQUATE?

{46} "'When an *effective* administrative remedy exists, that remedy is exclusive.'" *Charlotte-Mecklenburg Hosp. Auth. V. N. Carolina Indus. Comm'n*, 336 N.C. 200, 209, 443 S.E.2d 716, 722 (1994) (quoting *Lloyd v. Babb*, 296 N.C. 416, 428, 251 S.E.2d 843, 852 (1979)), *superseded by statute on other grounds as recognized in Carolinas Med. Ctr. v. Employers & Carriers Listed in Exhibit A*, 172 N.C. App. 549, 616 S.E.2d 588 (2005). When a party comes to court requesting a remedy for the violation of its constitutional rights, "the judiciary must . . . bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power." *Corum*, 330 N.C. at 784, 413 S.E.2d at 291. However, the judiciaries' deference to remedies established by its coordinate branches of government is not limitless, and "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Id.* at 782, 413 S.E.2d at 289.

{47} In order for a remedy "'to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim.'" *Cooper v. Denlinger*, 363 N.C. 784, 789, 688 S.E.2d 426, 429 (2010) (quoting *Craig v. New Hanover Cty. Bd. of Educ.,* 363 N.C. 334, 339–40, 678 S.E.2d 351, 355 (2009)).

{48} Plaintiffs alleged in their complaint that "Plaintiffs do not have a valid remedy under N.C. Gen. Stat. § 105-241.7[,]" (Compl. ¶ 25), and that "[t]he administrative remedies provided in N.C. Gen. Stat. § 105-241.7 *et seq* do not apply to Plaintiffs." (Compl. ¶ 26.) While at first glance Section 105-241.17 appears to allow taxpayers to access the courts, a closer review of the Section reveals the presence of conditions to filing an action that make access impossible for Plaintiffs.

{49} For an action to be brought, Plaintiffs must comply with all of Section 105-241.17's conditions, the first of which requires that "[t]he taxpayer exhaust[] the pre[-]hearing remedy by receiving a final determination after a review and a conference." N.C. GEN. STAT. § 105-241.17(1). The pre-hearing remedy is

established under Sections 105-241.7, .11–.14, and is the "[p]rodecure for obtaining a [tax] *refund*." N.C. GEN. STAT. § 105-241.7 (2011) (emphasis added). Taxpayers can "request a *refund* of an overpayment made by the taxpayer by . . . [f]iling an amended return . . . [or] [f]iling a claim for refund." N.C. GEN. STAT. §§ 105-241.7(b)–(b)(1–2) (emphasis added).

{50} By its terms, Section 105-241.7 does not allow a taxpayer to challenge the constitutionality or validity of tax provisions that do not relate to the Department of Revenue's determination of whether a refund should be granted. *See* N.C. Gen. Stat. § 105-241.7. This is problematic for taxpayers like Plaintiffs that want to challenge reporting and tax transfer requirements that have no impact on tax liability or refunds. *See* N.C. Gen. Stat. § 105-164.4(a)(3); (Compl. ¶¶ 106–17.)

{51} The Court next notes that under Section 105-241.7 a taxpayer may only request a refund of an overpayment made by the taxpayer. This condition would bar Plaintiffs from availing themselves of the pre-hearing remedy because Plaintiffs do not pay any tax. While Defendants argue that this fact does not demonstrate a deficiency in the statute, but rather Plaintiffs' unwillingness to comply with the law; the Court finds Defendants' argument unpersuasive.

{52} Section 105-164.4 imposes the Sales Tax "on retailer[s] . . . ." N.C. GEN. STAT. § 105-164.4. Plaintiffs are not retailers, but instead facilitators, and accordingly, only subject to Section 105-163.4(a)(3)'s reporting and tax transfer requirements. *See* Section III(B)(2)(d)(2) *supra*. Defendants strenuously argue that the Sales Tax also "imposes a . . . tax on facilitators[,]" (Def. Hoyle and Department of Revenue's Br. Supp. Mot. Dismiss ("State's Br. Supp. Mot. Dismiss") 11 (citing N.C. GEN. STAT. § 105-164.4(a)(3))), because "facilitators must send the retailer . . . the tax due on the sales price . . . [and are] liable for the amount of tax [they] fail[] to send." (State's Br. Supp. Mot. Dismiss 11 (quoting Compl. ¶¶ 80, 182.) However, Defendants' position is an overly broad interpretation of Section 105-164.4.

{53} While it is true that Plaintiffs could be held liable for failing to transfer the sales tax they collect from consumers, this liability does not impose a tax on facilitators or require them to pay the tax to the State. Because Plaintiffs do not

pay the tax, they are not "taxpayer[s] . . . request[ing] a refund of an overpayment made by *the taxpayer*," N.C. Gen. Stat. § 105-241.7(b) (emphasis added), and accordingly, would not have available to them the pre-hearing remedy that must be completed before an action to challenge the constitutionality of the Sales Tax can be filed. N.C. GEN. STAT. § 105-241.17(1); *see also Charlotte-Mecklenburg Hosp. Auth.*, 336 N.C. at 209–11, 443 S.E.2d at 722–23 (stating that because the remedies adopted by the General Assembly did not allow the plaintiffs to challenge the provisions they claimed were unlawful, an adequate remedy was not provided).

{54}    Plaintiffs' inability to participate in the pre-hearing remedy also prevents them from complying with Section 105-241.17's second condition that requires the taxpayer "commence[] a contested case at the Office of Administrative Hearings." N.C. GEN. STAT. § 105-241.17(2). Contested cases may only be filed with the Office of Administrative Hearings after "the taxpayer has exhausted the pre[-]hearing remedy." N.C. GEN. STAT. § 105-241.15 (2011). Because Plaintiffs are unable to access the pre-hearing remedy, they can not exhaust that remedy, and therefore can not meet the requirements for filing a contested case.

{55}    Inability to participate in the pre-hearing remedy also makes it impossible for Plaintiffs to comply with Section 105-241.17's fourth condition that requires "[t]he taxpayer . . . pa[y] the amount of tax, penalties, and interest the final determination states is due." N.C. GEN. STAT. § 105-241.17(4).

{56}    As part of the pre-hearing remedy, after a taxpayer files an amended return or claim for refund, the Department of Revenue must act on the request within six months. Outright denial or inaction by the Department is considered a "proposed denial of the requested refund." *Id.* at § 105-241.7(c). If a taxpayer objects to a proposed denial, the taxpayer may request Departmental review by filing a request for review. N.C. GEN. STAT. § 105-241.11(a). Upon receiving a request for review, "the Department must conduct a review of the proposed denial . . . and . . . [either]: (1) Grant the refund or remove the assessment[;] (2) Schedule a conference with the taxpayer[; or] (3) Request additional information from the taxpayer concerning the requested refund or proposed assessment." N.C. GEN.

STAT. §§ 105-241.13(a)(1–3).

{57} When the Department decides not to grant the request for refund, a conference with the taxpayer is required. *Id.* at § 105-241.13(b). After the conference, the taxpayer and the Department must either: agree "on a settlement[,] agree that additional time is needed to resolve the taxpayer's objection[,] [or conclude that] [t]he Department and the taxpayer are unable to resolve the taxpayer's objection to the proposed denial . . . ." *Id.* at §§ 105-241.13(c)(1–3). If the Department and the taxpayer are unable to resolve the objection, "the Department must send the taxpayer a notice of final determination concerning the refund." N.C. GEN. STAT. § 105-241.14(a).

{58} Plaintiffs' inability to access the pre-hearing remedy prevents them from participating in the pre-hearing process that could result in the issuance of a final determination. Without a final determination, Plaintiffs can not pay the tax, penalties, and interest identified in a final determination, and thus can not comply with Section 105-241.17's fourth condition.

{59} While Section 105-241.17 appears to provide all taxpayers with the opportunity to challenge the constitutionality of the Sales Tax, its conditions for filing a suit make it impossible for taxpayers who are not responsible for paying the tax to access the Courts. If this Court were to dismiss Plaintiffs' claims for failure to comply with conditions that are impossible for them to meet, it would leave Plaintiffs "without a remedy to redress the alleged constitutional injury to its rights . . . ." *Cowell*, 2013 N.C. App. LEXIS 178 *16. Therefore, the Court concludes that the conditions for accessing Section 105-241.17's remedy make it impossible for Plaintiffs to enter the courthouse doors and present their claims. Because Plaintiffs are unable to access the courts under the remedy established by the legislature, the Court concludes that the remedy provided is inadequate to protect Plaintiffs' constitutional rights. Accordingly, for the reasons stated above the Court concludes that Plaintiffs have sufficiently alleged a common law waiver to governmental immunity and are therefore entitled to bring this action without first meeting the conditions of Section 105-241.17.

4.

## CAN PLAINTIFFS PROCEED WITH ALL OF THEIR CLAIMS?

{60}    Defendants argue that even if the Court concludes that the remedy provided is inadequate, Plaintiffs should still be barred from proceeding with any claim not brought "under Article I of the North Carolina Constitution." (State's Reply Supp. Mot Dismiss 5.) Defendants argue that while the Supreme Court's ruling in *Corum* allows for direct actions to be filed against the State under certain circumstances, the Court also limited the claims that could be brought to those arising under Article I of the North Carolina Constitution. (State's Reply Supp. Mot Dismiss 5.)

{61}    "The Court could hardly have been clearer in its holding in *Corum*: '[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution.'" *Craig*, 363 N.C. at 338, 678 S.E.2d at 354 (quoting *Corum*, 330 N.C. at 782, 413 S.E.2d at 289). This legal principle has resulted in *Corum* claims being brought under multiple articles of the North Carolina Constitution. *See Craig*, 363 N.C. at 335, 678 S.E.2d at 352 (allowing plaintiffs to proceed with a claim under Article IX, Section 1); *Cowell*, 2013 N.C. App. LEXIS 178 *15 (stating that under *Corum* and *Craig*, plaintiffs are not limited to bringing claims under Article I of the North Carolina Constitution).

{62}    Defendants are correct that the North Carolina Court of Appeals decision in *Petroleum Traders Corp. v. State*, refused to extend the Supreme Court's reasoning in *Corum* to claims brought under Article II, Section 23 of the North Carolina Constitution. 190 N.C. App. 542, 551, 660 S.E.2d 662, 667 (2008). However, Defendants' contention that only Article I claims can be brought under *Corum* ignores the fact that: (1) Article II, Section 23 of the North Carolina Constitution "does not articulate . . . rights, only procedures to be followed[,]" *Id.* at 547, 660 S.E.2d at 665, and (2) after the ruling in *Petroleum Traders Corp.*, the Supreme Court revisited the issue of sovereign immunity in *Craig*, and allowed the plaintiffs in that case to pursue constitutional claims under both Article I and

Article IX of the Constitution.  *Craig*, 363 N.C. at 335, 678 S.E.2d at 352.

{63}     Based on the Supreme Court's ruling in *Craig* and the Court of Appeals recent decision in *Cowell*, the Court concludes that Plaintiffs may proceed with all of their claims brought under the North Carolina Constitution.  While Plaintiffs are entitled to bring direct claims under the North Carolina Constitution, this Court can not find, and Plaintiffs have not provided, any case law to suggest that Plaintiffs can proceed with their claims brought under federal law or the Contracts Clause or Commerce Clause of the United States Constitution.[3]  Accordingly, Defendants' Motions to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) are GRANTED in part, and DENIED in part.  Plaintiffs' claims under the Internet Tax Freedom Act, the Contracts Clause of the United States Constitution, and the

---

[3] The Court acknowledges that under certain circumstances Congress can waive a state's sovereign immunity maintained under the Eleventh Amendment. *Coll. Sav. Bank v. Fla. Prepaidpostsecondary Ed. Expense Bd.*, 527 U.S. 666, 670 (1999).  However, these cases are limited to situations where Congress "exercises . . . its power to enforce the Fourteenth Amendment . . . [or] a State . . . waive[s] its sovereign immunity by consenting to suit." *Id.* Accordingly, the North Carolina Supreme Court has allowed actions to be brought in state courts under 42 U.S.C. § 1983 to protect rights established under the First and Fourteenth Amendments to the United States Constitution. *See Corum*, 330 N.C. at 770, 413 S.E.2d at 282; *see also Paquette v. County of Durham*, 155 N.C. App. 415, 419, 573 S.E.2d 715, 718 (2002) (stating that "our Supreme Court held that sovereign immunity cannot bar liability in federal civil rights actions filed in state courts.").  While Congress can abrogate sovereign immunity to enforce the Fourteenth Amendment, that power does not extend to acts passed pursuant to Congress' power under the Commerce Clause of the United States Constitution. *Huber v. N.C. State Univ.*, 163 N.C. App. 638, 644, 594 S.E.2d 402, 407 (2004) (citing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 72–73, 134 L. Ed. 2d 252, 276–77, 116 S. Ct. 1114 (1996)).  Here, Plaintiffs have not brought a claim under Section 1983 to enforce rights protected by the Fourteenth Amendment, but instead have asserted claims for declaratory relief alleging violations of the Contracts Clause, Commerce Clause, and Equal Protection Clause of the United States Constitution.  While Plaintiffs might be able to bring an action in federal court against Defendant Hoyle requesting injunctive relief to prevent the enforcement of the allegedly unconstitutional Sales Tax provisions, *see Ex parte Young*, 209 U.S. 123, 152 (1908) (stating that "the United States will restrain a state officer from executing an unconstitutional statute of the State, when to execute it would violate rights and privileges of the complainant which had been guaranteed by the Constitution . . . ."), that does not mean that Plaintiffs have license to bring all of its claims in this Court against these Defendants. *See Petroleum Traders Corp.*, 190 N.C. App. 542, 660 S.E.2d 662 (reversing trial court's denial of defendants' motion to dismiss based on sovereign immunity grounds, where plaintiffs sought a declaratory judgment that the statute in question violated the Commerce Clause of the United States Constitution).

Commerce Clause of the United States Constitution are DISMISSED.

## 5.

## VENUE

{64}    Actions "[a]gainst a public officer or person especially appointed to execute his duties, for an act done by him by virtue of his office," N.C. Gen. Stat. § 1-77(2) (2011), "must be tried in the county where the cause, or some part thereof, arose . . . ." N.C. GEN. STAT. § 1-77.  The requirement that actions against public officials be tried in the county where the cause arose has also been applied to actions against counties.  *Coats*, 264 N.C. at 333, 141 S.E.2d at 491 (citing *Johnston v. Bd. of Comm'rs*, 67 N.C. 101 (1870)).

{65}    While the requirements for bringing an action against a public officer have been extended to counties, Section 1-77 "does not apply to actions against the State." *Smith v. State*, 289 N.C. 303, 334, 222 S.E.2d 412, 432 (1976).

{66}    "'[T]he cause of action arises in the county where the acts or omissions constituting the basis of the action occurred.'" *Id.* at 333, 222 S.E.2d at 432 (quoting *Coats*, 264 N.C. at 334, 141 S.E.2d at 492).  "'[A] cause of action may be said to accrue, within the meaning of a statute fixing venue of actions, when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested.'" *Smith*, 289 N.C. at 333, 222 S.E.2d at 432 (quoting 77 Am. Jur. 2d *Venue* § 37 (1975)).

{67}    As well as the Court can determine, Defendant Durham argues that venue should be transferred from Wake County to Durham County simply because Durham is a defendant in this action.  (Def. Durham's Mot. Dismiss 10–11.)  However, a county is not entitled to be sued within its boundaries simply because it is a defendant.  Rather, proper venue is determined by locating the county where the cause of action arose.  *Coats*, 264 N.C. at 333, 141 S.E.2d at 491.

{68}    The Court is confronted with a unique factual situation.  Here, the Defendants are a county (Durham), a public official (the Secretary of Revenue), and the State of North Carolina.  While Section 1-77's provisions do not apply to the State, *Smith*, 289 N.C. at 334, 222 S.E.2d at 432, they do apply to both Defendants

Durham and Hoyle. The Court's analysis is further complicated by the fact that Plaintiffs' action is for declaratory judgment, and thus the Complaint does not include allegations identifying where acts and omissions occurred.

{69} Plaintiffs argue that, as applied, the Amendments to the State Sales Tax and Durham's Room Occupancy Tax are unconstitutional and in violation of the Internet Tax Freedom Act. (Compl. ¶¶ 94–203.) Accordingly, the Court concludes that the allegedly invalid Amendments would have become unconstitutional when they were passed, and thus the acts constituting the basis of the action occurred where the Amendments were adopted. Because the Amendments were passed by the North Carolina General Assembly in Raleigh, the cause of action arose in Wake County.

{70} In addition, the Court notes that Section 1-77 only requires that an action be brought in a county where "some part" of the action arose. N.C. GEN. STAT. § 1-77. Accordingly, even if it were true that the acts that gave rise to the *claims* against Durham, occurred in Durham County, some of the acts that gave rise to the *action* also occurred in Wake County, and thus venue would still be proper in Wake County. *Id.*; *see also Frink v. Batten*, 184 N.C. App. 725, 730, 646 S.E.2d 809, 812 (2007) (stating that when the acts giving rise to an action occur in multiple counties venue would be proper in either county). Because some of the acts giving rise to this action occurred in Wake County the Court concludes that Wake County is an appropriate venue for Plaintiffs to bring their case, and therefore, Durham's Motion to Dismiss pursuant to Rule 12(b)(3) is DENIED.

IV.

CONCLUSION

{71} For the above stated reasons, the Court DENIES Defendant Durham's Motion to Dismiss pursuant to Rule 12(b)(1); DENIES Defendant Durham's Motion to Dismiss pursuant to N.C. Gen. Stat. § 1-75.3; GRANTS in part, and DENIES in part Defendants' Motions to Dismiss pursuant to Rules 12(b)(2), and 12(b)(6); and DENIES Defendant Durham's Motion to Dismiss pursuant to Rule 12(b)(3) and N.C. Gen. Stat. § 1-77. Therefore, Plaintiffs' claims brought under the Internet Tax

Freedom Act, the Contracts Clause of the United States Constitution, and the Commerce Clause of the United States Constitution are DISMISSED.

{72}     Pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, the Court determines that there is no just reason for delay in entering final judgment as to Plaintiffs' claims under the Internet Tax Freedom Act (Count I), the Contracts Clause of the United States Constitution (Count II), and the Commerce Clause of the United States Constitution (Counts III–VI). Final judgment is hereby entered as to those claims, which are certified for immediate appeal.

SO ORDERED, this the 21st day of June 2013.